Peter N. Wang (#9216)
Yonaton Aronoff (#3492)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474
(212) 687-2329 fax

Frank W. DiCastri
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 271-2400
(414) 297-4900 fax

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| | ) | |
| TOM ARMA, TOM ARMA STUDIO, INC. & | ) | |
| TOM ARMA COSTUMES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-10967 (RWS) |
| | ) | |
| BUYSEASONS, INC., BUYCOSTUMES & | ) | |
| JALEM GETZ, | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS OR TO TRANSFER VENUE

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER JALEM GETZ ............... 2

     A.     C.P.L.R. § 302(a)(1) Does Not Support Jurisdiction Over Getz. .......................... 4

     B.     C.P.L.R. § 302(a)(2) Does Not Support Jurisdiction Over Getz. .......................... 7

     C.     C.P.L.R. § 302(a)(3) Does Not Support Jurisdiction Over Getz. .......................... 8

     D.     C.P.L.R. § 302(a)(4) Does Not Support Jurisdiction Over Getz. .......................... 9

     E.     The Exercise Of Personal Jurisdiction Over Getz Would Violate Due
           Process. ................................................................................................................ 9

II.     THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE VENUE IS
      IMPROPER IN THIS COURT ...................................................................................... 10

     A.     Venue In This Court Is Improper As To Getz. .................................................... 10

     B.     Venue In This Court Is Improper As To Buyseasons. ......................................... 12
           1.     By its own terms, the Forum Selection Clause does not apply to
                this action. ............................................................................................ 12
           2.     The breach of contract action does not save the Forum Selection
                Clause. .................................................................................................. 15
           3.     Plaintiffs failed to allege that any of the events occurred in this
                judicial district. ................................................................................... 16

III.     VENUE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF
       WISCONSIN ................................................................................................................. 18

IV.     COUNTS 1-4 AND 8 FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN
       BE GRANTED .............................................................................................................. 21

     A.     Plaintiffs Fail To State A Claim For Breach Of Contract. ................................... 21

     B.     Plaintiffs Fail To State A Claim For Copyright Infringement. ............................. 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

### CASES

*Ampa Ltd. v. Kentfield Capital, LLC,*
   2001 WL 204198 (S.D.N.Y.) ................................................................................. 8-9

*Anderson v. Continental Cas. Co.,*
   258 F. Supp. 2d 1127 (C.D. Cal. 2003) .....................................................................23

*Animation Station, Ltd. v. The Chicago Bulls, LP,*
   992 F. Supp. 382 (S.D.N.Y. 1998) ...........................................................................20

*Anselmo v. Univision Station Group, Inc.,*
   1993 WL 17173 (S.D.N.Y.) ......................................................................................15

*Asahi Metal Industry Co. v. Superior Court,*
   480 U.S. 102 (1987) ..............................................................................................9, 17

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. __, 127 S.Ct. 1955 (2007) ..........................................................................23

*Bensusan Restaurant Corp. v. King,*
   126 F.3d 25 (2d Cir. 1997) .....................................................................................3, 8

*Browning v. Clinton,*
   292 F.3d 235 (D.D.C. 2002) .....................................................................................22

*Bulk Oil (USA), Inc. v. Sun Oil Trading Co.,*
   584 F. Supp. 36 (S.D.N.Y. 1983) ...............................................................................8

*Cheever v. Academy Chicago Ltd.,*
   685 F. Supp. 914 (S.D.N.Y. 1988) ...........................................................................14

*Coker v. Bank of America,*
   984 F. Supp. 757 (S.D.N.Y. 1997) ...........................................................................19

*Corcovado Music Corp. v. Hollis Music, Inc.,*
   981 F.2d 679 (2d Cir. 1993) .....................................................................................14

*De Jesus v. Sears, Roebuck & Co.,*
   87 F.3d 65 (2d Cir. 1996) .........................................................................................24

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.,*
   872 F. Supp. 81 (S.D.N.Y. 1995) .............................................................................19

*Feathers v. McLucas,*
   261 N.Y.S.2d 8 (N.Y. 1965) ......................................................................................8

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ................................................................................22

*French Transit, Ltd. v. Modern Coupon Systems, Inc.*,
   858 F. Supp. 22 (S.D.N.Y. 1994) ...............................................................10, 17

*Garrel v. Nylcare Health Plans, Inc.*,
   1999 WL 459925 (S.D.N.Y.) ...........................................................................12

*Granat v. Bochner*,
   702 N.Y.S.2d 262 (N.Y. App. Div. 2000) ........................................................6

*Insight Data Corp. v. First Bank Systems, Inc.*,
   1998 WL 146689 (S.D.N.Y.) ...........................................................................11

*Kadar Corp. v. Milbury*,
   549 F.2d 230 (1st Cir. 1977) ...........................................................................22

*Karabu Corp. v. Gitner*,
   16 F. Supp. 2d 319 (S.D.N.Y. 1998) ..........................................................2, 4-6

*Kreutter v. McFadden Oil Corp.*,,
   522 N.E.2d 40, 44 (N.Y. 1988) .........................................................................4

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*,
   565 N.E.2d 488 (N.Y. 1990) ..............................................................................4

*Lehigh Valley Industries v. Birenbaum*,
   389 F. Supp. 798 (S.D.N.Y.) *aff'd* 527 F.2d 87 (2d Cir. 1975) .......................9

*Linzer v. EMU Blackwood Music, Inc.*,
   904 F. Supp. 207 (S.D.N.Y. 1995) ..................................................................11

*Marvullo v. Gruner & Jahr AG & Co.*,
   105 F. Supp. 2d 225 (S.D.N.Y. 2000) ........................................................24-25

*Merkel Assocs., Inc. v. Bellofram Corp.*,
   437 F. Supp. 612 (W.D.N.Y. 1977) ...................................................................7

*Packer v. TDI Systems, Inc.*,
   959 F. Supp. 192 (S.D.N.Y. 1997) ....................................................................2

*PI, Inc. v. Quality Products, Inc.*,
   907 F. Supp. 752 (S.D.N.Y. 1995) ..................................................................11

*Siegel v. Holson Co.*,
   768 F. Supp. 444 (S.D.N.Y. 1991) ................................................................5, 9

STATUTES

28 U.S.C. § 1391(b) ................................................................................ 10-11, 16-18

28 U.S.C. § 1391(c) ...................................................................................... 10-11

28 U.S.C. § 1400(a) ...................................................................................... 10-12

28 U.S.C. § 1404 ............................................................................................ 1, 18

28 U.S.C. § 1406 ............................................................................................ 1, 18

N.Y. C.P.L.R. § 301 ............................................................................................. 4

N.Y. C.P.L.R. § 302 .......................................................................................... 3-9

**OTHER AUTHORITIES**

Rule 12, Fed. R. Civ. P. ...................................................................... 1, 21-22, 24

Rule 45, Fed. R. Civ. P. .......................................................................................21

Local Civil Rule 7.1 ..............................................................................................1

Defendants Buyseasons, Inc. ("Buyseasons") and Jalem Getz ("Getz" and together with Buyseasons, the "Defendants"),[1] by their attorneys, Foley & Lardner LLP, pursuant to Rules 12(b)(2), (b)(3) and (b)(6) of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 1404 and 1406, and Local Civil Rule 7.1, submit this memorandum of law in support of their motion for entry of an order dismissing this case for lack of personal jurisdiction and improper venue, or in the alternative transferring venue of this action to the United States District Court for the Eastern District of Wisconsin, or as a second alternative, dismissing counts 1-4 and 8 of the Amended Complaint for failure to state a claim upon which relief can be granted.

## BACKGROUND

Defendant Buyseasons is an internet costume retailer. *See* Getz Aff. at ¶ 2. It is a Delaware corporation with its principal place of business in New Berlin, Wisconsin. *See id.* Buyseasons sells costumes through its principal web site, www.buycostumes.com (the "Web Site"), but does not have an office in New York. *See id.* Defendant Getz is a Wisconsin resident who is currently employed as the President of Buyseasons. *See* Getz Aff. at ¶ 1-2. Getz is not a shareholder of Buyseasons. *See id.* at ¶ 3.

From May 2004 to November 15, 2007, Buyseasons and Plaintiff Tom Arma Costumes, Inc. were parties to an "Exclusive On-Line Distribution Agreement" by which Buyseasons agreed to distribute Tom Arma brand costumes on the Web Site (the "Distribution Agreement"). *See* Getz Aff. at ¶ 4. The Distribution Agreement expired on its own terms on November 15, 2007. *See, e.g.,* Amended Complaint at ¶¶ 32-33 (hereinafter, "Am. Comp. ¶ _").

---

[1] The other named Defendant, "Buycostumes," is not a separate legal entity, but merely the brand name for Buyseasons, Inc.'s web site, www.buycostumes.com. *See* Affidavit of Jalem Getz at ¶ 2, n.1, submitted herewith (hereinafter, "Getz Aff.").

Eighteen days after the Distribution Agreement expired, on December 3, 2007, Plaintiffs Tom Arma, Tom Arma Studio, Inc., and Tom Arma Costumes, Inc. (collectively, the "Plaintiffs"), filed a complaint against Defendants asserting claims for copyright and trademark infringement, unfair competition, associated vicarious and contributory liability claims, and breach of contract. Plaintiffs amended their complaint on January 11, 2008 (the "Amended Complaint"). Plaintiffs allege that, *after the Distribution Agreement expired*, Defendants infringed on their copyrights and trademarks by continuing to display Tom Arma trademarks and copyrighted photos on the Web Site. For the reasons discussed below, Plaintiffs' Amended Complaint must be dismissed, or venue must be transferred to the Eastern District of Wisconsin.

## ARGUMENT

### I.    THIS COURT LACKS PERSONAL JURISDICTION OVER JALEM GETZ

Plaintiffs bear the burden of establishing jurisdiction over the Defendants by a preponderance of the evidence. *See, e.g., Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998). To defeat this motion, Plaintiffs' Amended Complaint must contain good faith, legally sufficient allegations of jurisdiction. *See id.* Notably, Plaintiffs *cannot* rely on the forum selection clause in the expired Distribution Agreement (the "Forum Selection Clause") to support personal jurisdiction over Getz because Getz was not a party to the Distribution Agreement. *See Packer v. TDI Systems, Inc.*, 959 F. Supp. 192, 195 n.2, 198-99, 202 (S.D.N.Y. 1997) (finding that forum selection clause applies only to corporate parties to contracts, not to individual signatories, but denying motion to dismiss where sufficient allegations of *alter ego* status were made). Here, Plaintiffs do not, and cannot, allege that Buyseasons is the alter ego of Getz.[2]

---

[2] In any event, the Forum Selection Clause does not apply to this case. *See infra.*, Section II.B.1.

So, to determine whether personal jurisdiction exists over Getz, the Court must look to the long-arm statute of the forum state. *See, e.g., Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). If the exercise of jurisdiction is appropriate under New York's long-arm statute, the Court must then decide whether such exercise comports with due process. *See id.* In this case, jurisdiction over Getz is lacking under the plain language of New York's long-arm statute, but also because the requisites of due process have not been met.

The relevant New York long-arm statute, N.Y. C.P.L.R. § 302, provides as follows:

> § 302. Personal jurisdiction by acts of non-domiciliaries.
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> (3) commits a tortious act without the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302 (2007).

###### A.    C.P.L.R. § 302(a)(1) Does Not Support Jurisdiction Over Getz.

Getz personally does not conduct the internet business described in the Amended Complaint, nor does he personally transact business in New York.  Getz Aff. at ¶ 6.  In fact, Plaintiffs do not contend that Getz personally engaged in *any* business in New York sufficient to confer jurisdiction over Getz in his individual capacity.  All of the allegations against Getz are for vicarious or contributory liability arising from Buyseasons' allegedly wrongful conduct.  *See, e.g.,* Am. Comp. at pp. 13-15.[3]  Therefore, if Plaintiffs are to establish personal jurisdiction over Getz under C.P.L.R. § 302(a)(1), they must demonstrate that Buyseasons transacted business in New York as Getz's agent.  *See Karabu*, 16 F. Supp. 2d at 323 (citing *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988)).

To impute jurisdiction to Getz, Plaintiffs must show that Buyseasons engaged in purposeful activities in New York in relation to Plaintiffs' transactions *for the benefit of and with the knowledge and consent of* Getz, and that Getz *exercised control* over Buyseasons in the matter.  *See id.* (citations and quotes omitted).  The core of the inquiry is whether the out-of-state corporate officer was the "primary actor" in the New York transaction(s) that gave rise to the litigation, and not merely some corporate employee who played no part in it.  *See id.* (citations and quotes omitted).

Here, Plaintiffs make no allegations about Getz's personal contacts with the State of New York.  Even if Plaintiffs have alleged that *Buyseasons* engaged in purposeful activities in

---

[3] Even if Plaintiffs claim to allege personal jurisdiction under New York's general jurisdiction statute, N.Y. C.P.L.R. § 301 (2007), this argument would fail.  Under this statute, jurisdiction is proper only if the defendant (Getz) is doing business in New York so as to establish a presence in the state.  The business cannot be "occasional" or "casual" but "with a fair measure of permanence and continuity."  *See Karabu*, 16 F. Supp. 2d at 322 (citing *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990)).  Any such contention is rejected by the Getz Affidavit, at ¶¶ 6-8.

New York relating to this litigation (this is far from clear, *see infra*., Section II.B.3), they have not alleged that such activities were for Getz's benefit or that Getz exercised control over the allegedly tortious actions.

In the first place, Plaintiffs are misinformed about Buyseasons' capital structure. Getz is not a shareholder of Buyseasons. *See* Getz Aff. at ¶ 3. He has value appreciation rights in Buyseasons, which entitle him to certain payments (upon triggering events such as a change in control) when it is determined, upon valuation, that the overall worth of Buyseasons has increased. *See id.* He also owns shares in Buyseasons' parent company, Liberty Media, Inc., but he is not a controlling shareholder of that company. *See id.* So contrary to Plaintiffs' allegations, Getz does not have a "direct financial interest" in Buyseasons, such that Buyseasons' actions are for his *personal benefit*. *See* Getz Aff. at ¶¶ 3, 7. *Cf. Siegel v. Holson Co.*, 768 F. Supp. 444, 446 (S.D.N.Y. 1991) (holding that revenue is not imputed to corporation's president for purposes of C.P.L.R. § 302(a)(3)(ii) when the president is a non-shareholding officer of the corporation).

Moreover, to demonstrate "control," a plaintiff's allegations must *sufficiently detail the defendant's conduct* so as to demonstrate that the defendant was a primary actor in the specific matter in question; control cannot be shown based merely upon the defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation. *See Karabu*, 16 F. Supp. 2d at 324 (citing cases). "Courts have . . . routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand." *Id.* (citing cases).

Here the Amended Complaint is devoid of specific allegations indicating how Getz participated in the allegedly tortious conduct. Notably, the following allegations all fail to rise to the level of specificity required by § 302(a)(1), *Karabu*, and the cases cited therein, for the reasons stated below:

- *Allegation*: Getz is "President, Chief Executive Officer (CEO) and principal shareholder and driving force behind co-defendants BuySeasons and BuyCostumes." Am. Comp. at ¶ 10. Allegation of corporate title alone is insufficient, as is mere allegation that Getz is the "driving force" behind Buyseasons. Also, it is factually inaccurate to suggest that Getz is a principal shareholder. *See* Getz Aff. at ¶ 3.

- *Allegation*: Getz "was actively engaged in the day to day decisions with respect to the use of intellectual property during the term of the contract." Am. Comp. at ¶ 37. This broadly-worded allegation is too vague to confer jurisdiction over Getz, and in any event, relates only to Getz's alleged behavior "during the term of the contract." This lawsuit stems from *post-contract* activity.

- *Allegation*: Getz "personally participated in the day to day decisions relating to the use of the marks and images in various forms of advertising and media during the term of the contract." Am. Comp. at ¶ 38. This broadly-worded allegation is too vague to confer jurisdiction over Getz, and in any event, relates only to Getz's alleged behavior "during the term of the contract." This lawsuit stems from *post-contract* activity.

- *Allegation*: "Such day to day involvement by GETZ was manifested in the forms of telephone calls, e-mails and other forms of communication by and between Mr. Getz and representatives of the Plaintiffs." Am. Comp. at ¶ 39. This allegation is insufficient to confer jurisdiction over Getz. *See, e.g., Granat v. Bochner*, 702 N.Y.S.2d 262, 263 (N.Y. App. Div. 2000) ("[S]ending faxes and making phone calls to this State are not, without more, activities tantamount to "transacting business" within the meaning of [§ 302(a)(1)]"). Moreover, the allegation again relates only to Getz's alleged behavior "during the term of the contract" when this lawsuit stems from *post-contract* activity.

- *Allegation*: Getz "had/has the right and ability to control and had actual control over the conduct of Buyseasons and the content of its web site." Am. Comp. at ¶¶ 68, 83. Vague allegations of control are insufficient to confer personal jurisdiction over an out-of-state corporate officer. *See Karabu*, 16 F. Supp. 2d at 324.

- *Allegation*: Getz "has a direct financial interest" in Buyseasons and "benefits from sales made through the web sites." Am. Comp. at ¶¶ 69, 84. This allegation fails because Getz is not a shareholder of Buyseasons, but merely its President. *See* Getz Aff. at ¶ 3. *See* discussion above.

- *Allegation*: Getz was "fully aware that Buyseasons was neither the creator and nor [sic] copyright holder in the subject images." Am. Comp. at ¶¶ 71, 86. This allegation does not demonstrate that Getz was personally involved in the alleged wrongdoing.

- *Allegation*: Getz "failed to negotiate or procure licensing rights from Plaintiffs which could have permitted the authorized use of the subject images." Am. Comp. at ¶¶ 72, 87. This allegation, that Getz *did not do something he could have done*, does not establish participation in the allegedly infringing conduct.

- *Allegation*: Getz is "vicariously liable" and "contributorily liable" for the alleged infringements. Am. Comp. at ¶¶ 75, 90. These are mere conclusory allegations as to liability; they do not support the exercise of personal jurisdiction.

These are the only allegations specific to Getz, and they are insufficient to confer personal jurisdiction under C.P.L.R. § 302(a)(1). Plaintiffs have failed to show that Buyseasons' alleged acts are attributable to Getz, or that Getz personally transacts business within New York.

### B.    C.P.L.R. § 302(a)(2) Does Not Support Jurisdiction Over Getz.

Having failed to show that Buyseasons' alleged acts are attributable to Getz, Plaintiffs will need to show that *Getz personally* committed a tortious act in New York if jurisdiction is to be premised upon C.P.L.R. § 302(a)(2). Remarkably, none of the allegations specific to Getz (listed above) suggests that he personally committed a tortious act in New York, so the inquiry should end.[4]

In any event, § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act. *See Bensusan*, 126 F.3d at 28-29 (adopting holding in *Feathers v. McLucas*, 261 N.Y.S.2d 8 (N.Y. 1965) and other

---

[4] Nor can Plaintiffs establish personal jurisdiction over Getz merely by including Getz in the definition of "Defendants." Indeed, Plaintiffs' use of the term "Defendants" appears inappropriate in many instances throughout the Amended Complaint. *See Merkel Assocs., Inc. v. Bellofram Corp.*, 437 F. Supp. 612, 616 (W.D.N.Y. 1977) ("The plaintiffs have frequently used the collective term "defendants" in the complaint, even where the term was inappropriate. . . . Therefore, unless the facts support the implication that the term "defendants" includes all the defendants, the term will be given its most restrictive application."). Here too, Plaintiffs' reference to "Defendants" should be limited to Buyseasons only, except where Plaintiffs make specific allegations regarding Getz's involvement.

cases); *Bulk Oil (USA), Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 40-41 (S.D.N.Y. 1983). During the relevant time period (after November 15, 2007), Getz was physically present in New York only one time, for personal reasons unrelated to Buyseasons or Plaintiffs. *See* Getz Aff. at ¶ 6.

        *Bensusan* was a trademark/dilution/unfair competition case like this one, and the Court of Appeals affirmed dismissal of the complaint in part because the acts giving rise to the lawsuit, including the authorization and creation of a web site, the use of allegedly infringing marks, and the creation of a hyperlink to Bensusan's web site, were performed by persons physically present in Missouri and not in New York. *See id.* at 29. The reasoning of the Court of Appeals is persuasive, and should be applied here.

### C.    C.P.L.R. § 302(a)(3) Does Not Support Jurisdiction Over Getz.

        As the Plaintiffs have not shown that Buyseasons' acts are attributable to Getz, the Court should consider only Getz's personal acts under § 302(a)(3)(i). *See, e.g., Ampa Ltd. v. Kentfield Capital, LLC*, 2001 WL 204198 at *3 (S.D.N.Y.). Here Plaintiffs have not alleged that Getz regularly does or solicits business, or "engages in any other persistent course of conduct" in New York, so the inquiry under this subsection should end. *See id.* In any event, Getz does not engage in such conduct. *See* Getz Aff. at ¶ 6.

        Nor can Getz be said to (i) derive substantial revenue from goods used or consumed or services rendered in New York, or (ii) derive "substantial revenue from interstate or international commerce." *See* C.P.L.R. §§ 302(a)(3)(i) and (ii). This Court has held that a corporation's revenues cannot be imputed to a corporate officer under circumstances similar to those present here. *See Siegel*, 768 F. Supp. at 446 (holding that revenue is not imputed to corporation's president for purposes of C.P.L.R. § 302(a)(3)(ii) when the president is a non-shareholding officer of the corporation). *See also Ampa*, 2001 WL at *4 ("[A]cceptance of

Kentfield's argument would produce the intolerable result that every officer or director of a major company accused of a tort outside the state could be subject to personal jurisdiction here without regard to the individual's own activities.").  Getz may have value appreciation rights in Buyseasons, but it cannot be said that he *personally* derives substantial revenue from interstate commerce or from goods used or consumed in New York.  *See* Getz Aff. at ¶ 7.  *See also Lehigh Valley Industries v. Birenbaum*, 389 F. Supp. 798, 805 (S.D.N.Y.) *aff'd* 527 F.2d 87 (2d Cir. 1975) (declining to "automatically attribut[e]" corporation's revenue to *sole shareholder*).

**D.    C.P.L.R. § 302(a)(4) Does Not Support Jurisdiction Over Getz.**

Getz does not own, use or possess any real property in New York, so § 302(a)(4) cannot be a basis for personal jurisdiction.  *See* Getz Aff. at ¶ 8.

**E.    The Exercise Of Personal Jurisdiction Over Getz Would Violate Due Process.**

"The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State."  *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-109 (1987) (internal quotation marks and citations omitted).  Minimum contacts must come about by an action of the defendant *purposefully directed toward the forum state*.  *See id.* at 112.  The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state, even if the defendant knows that the stream of commerce may or will sweep the product into the forum state.  *See id.*

Here, putting aside for the moment the fact that Plaintiffs cannot attribute Buyseasons' conduct to Getz, Plaintiffs make no allegations that Getz took actions purposefully directed at New York.  It would violate due process to require Getz to appear in New York simply because he is an employee of an internet company that places web pages and products

into the stream of commerce. This is true even if Buyseasons or Getz knows that the stream of commerce may inevitably sweep Buyseasons' products into New York via the internet.

For all of the foregoing reasons, the Court lacks personal jurisdiction over Getz and the claims against him must be dismissed.[5]

## II.    THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE VENUE IS IMPROPER IN THIS COURT

Plaintiffs have the burden of establishing that venue is proper in the Southern District of New York. *See, e.g., French Transit, Ltd. v. Modern Coupon Systems, Inc.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994). They allege that venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and pursuant to the Forum Selection Clause. *See* Am. Comp. at ¶ 12. Each of these arguments fails. Nor is venue is proper in this Court pursuant to 28 U.S.C. § 1400(a) (a statute Plaintiffs fail to mention) with respect to Plaintiffs' claims against Getz for copyright infringement. Consequently, the Amended Complaint must be dismissed.

### A.    Venue In This Court Is Improper As To Getz.

Plaintiffs cannot rely on the venue provisions of the Forum Selection Clause to haul Getz into this Court because he was not a party to the Distribution Agreement. *See supra.*, Section I. Nor can Plaintiffs legitimately claim that their copyright infringement claims against Getz are appropriately venued here. *See* 28 U.S.C. § 1400(a).[6] Getz does not reside in New York, *see* Getz Aff. at ¶ 8, and Plaintiffs have failed to allege, nor can they demonstrate, that Buyseasons is Getz's agent. *See supra.*, Section I.A. Moreover, a defendant may be "found"

---

[5] For purposes of this motion, and reserving all rights to argue otherwise, Defendants will assume that the Court has personal jurisdiction over Buyseasons under New York's long-arm statute.

[6] The venue provision applicable to copyright actions provides: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."

wherever that person is amenable to personal jurisdiction. *See, e.g., Linzer v. EMU Blackwood Music, Inc.*, 904 F. Supp. 207, 215 (S.D.N.Y. 1995). Getz is not subject to personal jurisdiction in New York. *See supra.*, Section I.

Consequently, to keep their case against Getz in this Court, Plaintiffs are left to rely exclusively on 28 U.S.C. § 1391(b) (the only remaining basis for venue) for their non-copyright claims.[7] Venue is not proper under § 1391(b)(1) because Getz does not reside in New York, so all defendants do not reside in the forum state. *Cf. Insight Data Corp. v. First Bank Systems, Inc.*, 1998 WL 146689 at *4 (S.D.N.Y.) (venue proper under 28 U.S.C. § 1391(a)(1), which contains language equivalent to § 1391(b)(1), only where all defendants reside in forum state). (For this reason, 28 U.S.C. § 1391(c), which merely clarifies where corporations "reside" for venue purposes, is unavailing). Nor is venue proper under § 1391(b)(3) because this action could have been brought in the Eastern District of Wisconsin where both Buyseasons and Getz are present. *See infra.*, Section III. Therefore, the only potentially applicable subsection is 1391(b)(2), which requires that a "substantial part of the events or omissions giving rise to the claim" occurred in New York.

But to show that a substantial part of the events or omissions giving rise to their claims against Getz occurred in New York, Plaintiffs would still have to demonstrate that Buyseasons' alleged actions can be imputed to Getz as a corporate officer. For all of the reasons discussed in detail above, Plaintiffs have neither alleged nor can they demonstrate that

---

[7] Even if successful in this venture, Plaintiffs would also have to demonstrate that the exercise of "pendent venue" would be appropriate because at least some of Plaintiffs' claims against Getz (the copyright claims) are indisputably not appropriately venued in this Court. *See, e.g., PI, Inc. v. Quality Products, Inc.*, 907 F. Supp. 752, 757 (S.D.N.Y. 1995) (plaintiff must show that venue is proper for each claim in an action involving multiple defendants and claims). Fortunately, pendent venue need not be considered because Plaintiffs cannot demonstrate that venue is proper as to Getz under § 1391(b).

Buyseasons' actions are attributable to Getz personally. Consequently, venue in this Court is improper as to Getz, and the Amended Complaint must be dismissed.

**B.    Venue In This Court Is Improper As To Buyseasons.**

Venue in this Court is also improper as to Buyseasons because the Forum Selection Clause does not apply to this action, and because Plaintiffs have failed to allege that a "substantial part of the events or omissions giving rise to the claim" occurred in New York.[8]

**1.    By its own terms, the Forum Selection Clause does not apply to this action.**

The Forum Selection Clause provides as follows:

9.2    <u>Governing Law; Jurisdiction</u>.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York applicable to contracts entered into and to be wholly performed within the State of New York.  In the event of any claim or controversy arising under this Agreement, the parties hereto hereby irrevocably submit to the personal jurisdiction of the Federal and state courts located in the County of New York, State of New York and hereby waive any objection thereto on the basis

---

[8] Just as Defendants have assumed that, for purposes of this motion, the Court has personal jurisdiction over Buyseasons, Defendants will also assume, reserving all rights to argue otherwise, that venue is proper in this Court solely with respect to Plaintiffs' copyright infringement claims against Buyseasons. *See* 28 U.S.C. § 1400(a) (treating venue and personal jurisdiction coextensively).  This assumption will be moot if the Court dismisses the copyright claims. *See infra.*, Section IV.B.

But even if the Court does not dismiss the copyright claims, this Court should decline to exercise "pendent venue" over Plaintiffs' other claims against Buyseasons.  In the first instance, § 1400(a) would permit Plaintiffs' claims to be brought in another district – namely, the Eastern District of Wisconsin – so the application of the more specific venue provision is not dispositive. *See Garrel v. Nylcare Health Plans, Inc.*, 1999 WL 459925 at *5 (S.D.N.Y.) (discussing two approaches to pendent venue).  Second, Plaintiffs' non-copyright claims for trademark infringement and unfair competition are the primary claims at issue in this case.  Plaintiffs' lawsuit stems primarily from a statement that appeared on the Web Site which Plaintiffs claim amounted to a "bait and switch" tactic by "trading off of the goodwill and reputation of the Tom Arma name . . . ." *See, e.g.,* Am. Comp. at ¶ 41.  At best, the copyright claims are equally as significant as the non-copyright claims.  In any event, a transfer of venue is warranted on alternative grounds, *see infra.* Section III, so it would be inappropriate for this Court to exercise pendent venue. *See Garrel*, 1999 WL at *5 (declining to apply pendent venue where two approaches to pendent venue did not produce a definitive result and where a transfer based on *forum non conveniens* was warranted).

of lack of venue, <u>forum non conveniens</u> or any similar-type grounds.

Am. Comp., Ex. D.

By its very terms, the Forum Selection Clause applies only to "any claim or controversy arising under this Agreement." Plaintiffs' claims in this case do not "arise under" the Distribution Agreement. The entire premise of Plaintiffs' claims is that the Distribution Agreement is no longer in effect. Plaintiffs specifically allege that "Defendants were at one time a licensee [sic] of plaintiffs pursuant to a written agreement, *said agreement having expired and of no further effect*." Am. Comp. at ¶ 2 (emphasis added). *See also* Am. Comp. at ¶ 32, Ex. E ("The second and final extension terminated the relations between the parties, effective November 15, 2007"). It is only these undisputed facts which allow Plaintiffs to state the basis for their claims for infringement:

> By terms [sic] of the aforementioned contracts, any and all rights to publish, employ or otherwise use the ARMA name, trademarks, copyrights or intellectual property ceased on November 15, 2007. There has not been and there does not exist now, any license, amendment, extension, authorization or permission allowing the use of any ARMA intellectual property of any kind by any or all of the defendants.

Am. Comp. at ¶ 33. *See also* Am. Comp. at ¶ 36 ("Defendants possess no rights to exploit, publish, disseminate, employ or utilize in any fashion any of plaintiffs' marks, copyrights, name or intellectual property, any and all such rights having terminated on November 15, 2007.").

The alleged events and circumstances giving rise to Plaintiffs' claims all occurred, with one possible exception, *after* the Distribution Agreement had expired on its own terms.[9]

---

[9] The possible exception is, of course, Plaintiffs' claim for breach of contract. As discussed below in Section IV.A., this is not a claim upon which relief can be granted. In any event, the claim is an artifice, included in the Amended Complaint only so Plaintiffs could attempt to legitimize their reliance on the Forum Selection Clause. *See infra.* Section II.B.2.

*See, e.g.,* Am. Comp. at ¶¶ 41-42.  More importantly, the claims are, by the very terms of their attendant allegations, viable only if the Distribution Agreement does *not exist*.  They are mutually exclusive of the Distribution Agreement; both cannot exist at the same time because Plaintiffs' claims presuppose the expiration of the Distribution Agreement.  Indeed, if the claims did "arise under" the Distribution Agreement, the terms of the Distribution Agreement would negate the claims.

"Where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect."  *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993).  *See also Cheever v. Academy Chicago Ltd.*, 685 F. Supp. 914, 917 (S.D.N.Y. 1988) (rejecting application of forum selection clause where claims for copyright infringement and violations of the Lanham Act were not part of the parties' publishing agreement).

In *Cheever*, this Court declined to apply a forum selection clause in large part because the plaintiffs attempted "to reject [the publishing agreement] as a source of any license with respect to [plaintiffs'] copyrights."  *Id.*  So it is here, where Plaintiffs attempt to reject the continuation of any rights under the Distribution Agreement beyond its expiration date.  Notably, Plaintiffs embrace the Distribution Agreement only when it suits them (read: the Forum Selection Clause).

Consequently, what is at stake in this suit is the vindication of alleged rights under the Copyright Act and the Lanham Act, not the interpretation of a contract.  Plaintiffs seek monetary and injunctive relief in an action arising out of Defendants' alleged infringement; they do not seek contractual relief.  Put simply, the parties to the Distribution Agreement could not have intended to choose a forum for extra-Agreement disputes.

**2.    The breach of contract action does not save the Forum Selection Clause.**

It is well established that plaintiffs cannot obviate forum selection clauses by artful pleading, such as by including causes of action in tort or other non-contract claims.  *See, e.g., Anselmo v. Univision Station Group, Inc.*, 1993 WL 17173 at * 3 (S.D.N.Y.).  In this case, Plaintiffs have done the opposite, by "artfully" pleading a legally insufficient contract claim in an attempt to trigger an otherwise inapplicable Forum Selection Clause.  The Court should reject this tactic.

Nowhere in the factual background to the Amended Complaint do Plaintiffs allege facts purporting to give rise to a claim for breach of contract.  Quite the opposite; Plaintiffs repeatedly reject the Distribution Agreement as an expired contract that is no longer in effect.  Thus, it appears to come as an afterthought when Plaintiffs include an eighth cause of action alleging that "Defendants"[10] "breached the terms of the written agreements by and between the parties" (the Distribution Agreement is referenced only in the third bullet point) by:

> •    Fail[ing] to seek and obtain approvals for the use of Plaintiffs' intellectual property as set forth hereinabove;
>
> •    Fail[ing] to make timely payments to the Plaintiffs;
>
> •    Fail[ing] to properly account to Plaintiffs as to the specific character, nature and extent of sales of Arma's goods as set out in paragraph 5.1 of the agreement between the parties (annexed hereto as Exhibit "D")

Am. Comp. at ¶ 113.  The consequence of these breaches, according to Plaintiffs, is damages of "not less then [sic] $250,000."  Am. Comp. at ¶ 115.

---

[10] As noted above, Getz was not a party to the Distribution Agreement, so this appears to be another example of Plaintiffs' improper use of the term "Defendants."  Nor were Plaintiffs Tom Arma or Tom Arma Studio, Inc. parties to the Distribution Agreement.

These allegations fail to state a claim upon which relief can be granted, so Count 8 cannot revive the Forum Selection Clause. *See infra.*, Section IV.A. What is more, the cumulative deficiencies of Plaintiffs' breach of contract claim, read in context with all of the other allegations in Plaintiffs' Amended Complaint, suggest that this cause of action is an artifice, pled for the sole purpose of legitimizing reliance on the otherwise inapplicable Forum Selection Clause. Under these circumstances, the Court should disregard the Forum Selection Clause, and require Plaintiffs to demonstrate that venue is proper under 28 U.S.C. § 1391(b)(2).[11]

### 3. Plaintiffs failed to allege that any of the events occurred in this judicial district.

In response to this motion, Plaintiffs will undoubtedly argue that Buyseasons is an internet company, and that it should be presumed that allegedly infringing material was distributed to computer users in the Southern District of New York. Nowhere, however, do Plaintiffs allege that this district has any connection whatsoever to the facts and circumstances giving rise to their claims. In fact, Buyseasons' Web Site was created and is maintained in the State of Wisconsin, and any allegedly infringing material would have been put on the Web Site by Wisconsin employees. *See* Getz Aff. at ¶ 5. Even assuming that Plaintiffs can demonstrate that several web pages with copyrighted or trademarked materials were accessible in the days following expiration of the Distribution Agreement, the placement of allegedly infringing products into the stream of commerce, without more, is not an act of Defendants "purposefully directed toward the forum state." *Cf. Asahi*, 480 U.S. at 112 (holding that due process requires more than placement of a product into the stream of commerce, even if defendant is aware that the stream of commerce may or will sweep the product into the forum state).

---

[11] Defendants have already demonstrated that 28 U.S.C. §§ 1391(b)(1) and (b)(3) do not support venue in this Court. *See supra.*, Section II.A.

In *French Transit*, 858 F. Supp. at 26-27, this Court transferred a trademark infringement case to the District of Arizona because the plaintiffs had failed to allege that the defendant had advertised the allegedly infringing product in New York, that defendant's distributors advertised the product in New York, or that defendant conducted a mailing of any publication describing the product to New York. *See id.* at 27 (finding that plaintiff did not demonstrate proper venue under 28 U.S.C. § 1391(b)(2) and transferring venue pursuant to 28 U.S.C. § 1406(a)). Although the product was available in this district, the defendant never made an active effort to sell any products in this district. *See id.*

The same is true here. Nothing in Plaintiffs' Amended Complaint suggests that Buyseasons directed any of its actions purposefully toward this district, much less that a "substantial part" of the events occurred here. Notably, Plaintiffs' claims arose only after November 15, 2007, when the Distribution Agreement expired, and Plaintiffs filed their original complaint a mere 18 days later. Any distribution of infringing material must have occurred within that 18 day period (*after* the busy Halloween season), so the potential period of exposure to any internet users is minimized from the outset.

Plaintiffs may argue that the alleged infringement continued after the filing of their original complaint, but Plaintiffs admit, as they must, that "Defendants have altered and/or removed certain of the complained of uses from the marketplace." Am. Comp. at ¶ 47. Indeed, as of the date of Plaintiffs' original complaint or shortly thereafter, Buyseasons believes it has addressed all of the alleged infringement issues raised in Plaintiffs' Amended Complaint. *See* Getz Aff. at ¶ 10. These remedial actions limited the potential scope of any alleged confusion in the marketplace even further, making it even more unlikely that Plaintiffs can demonstrate that a "substantial part" of the events occurred in this particular judicial district.

Because Plaintiffs cannot demonstrate that a substantial part of the alleged events occurred in this particular district, § 1391(b)(2) does not support venue for the claims against Buyseasons.  But even if venue is proper as to Buyseasons or Getz, the Court should transfer this case to the Eastern District of Wisconsin.

### III.    VENUE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF WISCONSIN

A transfer of venue to the Eastern District of Wisconsin is warranted under two statutes, 28 U.S.C. §§ 1404(a) and 1406(a).  The latter permits the Court to transfer venue of any case filed in the wrong district, if it is "in the interest of justice," to any district where the case could have been brought.  The former similarly permits a transfer for the "convenience of parties and witnesses, in the interest of justice," to a district where the case might have been brought.

There is little doubt that this case could have been brought in the Eastern District of Wisconsin.  Both Defendants are present in that district (Buyseasons has its principal place of business, and Getz resides, in such district), and Buyseasons' Web Site was created and is maintained there.  *See* Getz Aff. at ¶¶ 1, 2, 5.  If any allegedly infringing material found its way on to the Web Site, it would have been put there by Wisconsin employees.  *See* Getz Aff. at ¶ 5. So the only question to be considered is whether the "interest of justice" and the "convenience of parties and witnesses" justify a transfer, and they clearly do.

Any deference that would normally be accorded Plaintiffs' choice of forum is substantially diminished in this case because Plaintiffs sued in New York, which is neither Plaintiffs' home district nor the place where the substantial part of the events allegedly occurred. *See, e.g., Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) (plaintiff's choice of forum entitled to lesser weight because it was not his place of residence); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995) (deference accorded to plaintiff's

choice of forum is diminished substantially where forum is neither plaintiff's home district nor the place where events or transactions underlying the action occurred). As Plaintiffs allege in their Amended Complaint, the corporate Plaintiffs are Arizona corporations with their principal places of business in Tubac, Arizona. *See* Am. Comp. at ¶¶ 6-7. Plaintiff Tom Arma also resides in Tubac, Arizona. *See* Am. Comp. at ¶ 5.

In fact, the corporate Plaintiffs have been Arizona corporations since June 20, 2005, only one year after the parties signed the Distribution Agreement. *See* Getz Aff. at ¶ 9. After that time, Defendants believe that all payments Buyseasons made under the Distribution Agreement, and all related correspondence, was sent to (and, where applicable, from) Arizona, not New York. *See id.* New York appears to have been chosen as the forum for this case only because Plaintiffs' lawyer is located here, and, perhaps, because New York is an inconvenient forum for Defendants. These facts strongly support a transfer to the Eastern District of Wisconsin.

The Court should also consider the following factors, each of which supports a transfer to Wisconsin, or at a minimum, does not support venue in New York: (1) the convenience of witnesses and parties; (2) the location of documents and access to sources of proof; (3) the locus of operative facts; (4) the relative means of the parties; (5) the availability of process to compel unwilling witnesses; and (6) the forum's familiarity with governing law. *See, e.g., Animation Station, Ltd. v. The Chicago Bulls, LP*, 992 F. Supp. 382, 384 (S.D.N.Y. 1998) (listing factors).

Wisconsin is more convenient than New York for both the witnesses and the parties. The primary witnesses in this case will likely be Jalem Getz, other Wisconsin employees of Buyseasons who are responsible for Web Site content, Tom Arma, and Mr. Arma's wife, who

plays a substantial role in Plaintiffs' businesses.  *See* Getz Aff. at ¶ 11.  These witnesses and parties are located either in Wisconsin or Arizona; New York appears to be inconvenient for Plaintiffs and Defendants alike.  *See id.*  Similarly, most of the documents and other sources of proof will be in Wisconsin.  *See id.*  Plaintiffs themselves allege that "knowledge" regarding any alleged "offending uses" of Plaintiffs' copyrights and trademarks is "in the sole custody of the Defendants."  Am. Comp. at ¶ 43.  Buyseasons' Web Site and related documents are all located in Wisconsin (although Buyseasons' servers are located in Portland, Oregon).  *See* Getz Aff. at ¶¶ 5, 11.  It appears that these materials will be the focus of discovery in the case.

As discussed above, the locus of operative facts appears to be in Wisconsin more than New York.  Plaintiffs have been located in Arizona since 2005 and Buyseasons has never had an office in New York.  *See* Getz Aff. at ¶¶ 2, 9.  The allegations of wrongdoing in this case all stem from activity that would have occurred in Wisconsin.  Plaintiffs have alleged no facts to suggest that New York has any connection to this dispute whatsoever.

Plaintiffs' own allegations also make it clear that the relative means of the parties favors a transfer to Wisconsin.  Arma and the corporate Plaintiffs boast that they: (i) are "employed in countless major consumer advertising campaigns" all over the world, Am. Comp. at ¶ 13; (ii) "continuously and pervasively earned substantial fees from . . . worldwide licensing" for well over a decade, Am. Comp. at ¶¶ 14, 21, 27; (iii) have sufficient notoriety to have been featured in The Wall Street Journal and the New York Times, Am. Comp. at ¶ 26; (iv) are sought out and approached by potential licensees the world over "for the purposes [sic] of establishing business relationships with [Plaintiffs]," Am. Comp. at ¶ 27; and (v) have products that are "frequently the subject of media interest," are in "high demand," and are "regularly auctioned on

sites such as ebay [sic] at prices well above their usual retail selling prices," Am. Comp. at ¶ 28.

Under these circumstances, it is hard to imagine that Plaintiffs' means are a concern.

Finally, the non-party witnesses for the Defendant likely can be compelled to attend a trial in the Eastern District of Wisconsin, but cannot be compelled to attend in New York.  *See* F.R.C.P. 45.  In fact, it seems likely that none of the non-party witnesses, for Plaintiffs or Defendants, can be compelled to attend trial in New York.

For all of these reasons, the Court should transfer venue of this case to the Eastern District of Wisconsin.[12]

## IV.   COUNTS 1-4 AND 8 FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

In the event that the Court concludes that venue is proper here, and elects not to transfer this case to the Eastern District of Wisconsin, then, in the alternative, the Court should dismiss the breach of contract claim and the copyright infringement claims pursuant to Rule 12(b)(6).

### A.    Plaintiffs Fail To State A Claim For Breach Of Contract.

Plaintiffs' Eighth Cause of Action alleges that "Defendants" "have breached the terms of the written agreements by and between the parties."  (Am. Comp. ¶ 113.)  In support of this claim, Plaintiffs' only allegations are that "Defendants": (*i*) "[f]ailed to seek and obtain approvals for the use of Plaintiffs' intellectual property as set forth hereinabove;" (*ii*) "[f]ailed to make timely payments to the Plaintiffs;" and (*iii*) "[f]ailed to properly account to Plaintiffs as to the specific character, nature and extent of sales of Arma's goods as set out in paragraph 5.1 of

---

[12] The last factor, the forum's familiarity with governing law, should not favor one venue over the other as these are claims based on federal statutes.

the agreement between the parties." *Id.*  For several reasons, relief cannot be granted on this claim.

Most remarkably, each of Plaintiffs' allegations in Count 8 is undermined by the factual allegations that precede it.  The first paragraph of the contract claim incorporates by reference all of the allegations made in paragraphs 1-107 of the Amended Complaint, but not one of these paragraphs contains allegations that Plaintiffs engaged in wrongful conduct during the contractual period.  *See.* Am. Comp. ¶ 112.  Instead, Plaintiffs allege only that Defendants used Plaintiffs' trademarks and copyrighted materials "*after the contract period had expired*[.]"  (Am. Comp. ¶ 41 (emphasis added).)  Defendants cannot be found to have breached a contract when, at the time of the alleged transgressions, Plaintiffs insist that there was no contract in place to breach.

Dismissal of a claim under Rule 12(b)(6) is appropriate where the allegations made in the complaint contradict the claim asserted.  *See, e.g., Browning v. Clinton*, 292 F.3d 235, 242 (D.D.C. 2002) (citing Wright & Miller, *Federal Practice & Procedure* § 1357).  *See also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771-72 (2d Cir. 1994); *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977) ("[C]ourts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened[.]") (quoting Wright & Miller, *Federal Practice & Procedure* § 1357).

All of the bullet points in the second paragraph of Count 8 (¶ 113) are similarly contradicted by the allegations that precede them.[13]  The claim based on an alleged failure "to

---

[13] Only the third bullet point in paragraph 113 specifically refers to the Distribution Agreement. The remaining allegations only vaguely refer to "the written agreements by and between the parties." Am. Comp. at ¶ 113.

seek and obtain approvals for the use of Plaintiffs' intellectual property as set forth hereinabove" (bullet point 1) is plainly defeated by the previous allegations, which all relate to post-contract activity. With respect to the second and third bullet points, there are no temporal facts alleged to suggest that wrongs were committed while the Distribution Agreement was in place, so one is left to assume that Plaintiffs, again, only refer to post-contract events.

Plaintiffs may argue that, though they do not actually *state* a claim for a breach occurring while the Distribution Agreement was in place, such a claim is *implied* by the second and third bullet points. This argument should fail, because it is not proper for the Court to assume that the Plaintiffs "can prove facts which [they have] not alleged or that defendants have violated the laws in ways that have not been alleged." *Anderson v. Continental Cas. Co.*, 258 F. Supp. 2d 1127 (C.D. Cal. 2003) (quoting *Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983)). More importantly, although federal complaints do not need to include intricate details, "more than labels and conclusions" are required, and the factual allegations "must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S.Ct. 1955, 1964-65 (2007).

The alleged failure "to make timely payments to the Plaintiffs" (bullet point 2), without more, does not rise above a speculative level. The allegation is not tied to any particular part of the Distribution Agreement, and is wholly unsupported by alleged facts suggesting what particular payments were late, when they were due and made, why such late payments create a claim under the Distribution Agreement, or how such a claim translates into damages exceeding $250,000. *See* Am. Comp. at ¶¶ 112-115. The same details are missing from the third bullet point. Therefore, the breach of contract claim must be dismissed. *See, e.g., De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory

allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).")
(quotations and citation omitted).

    **B.**    **Plaintiffs Fail To State A Claim For Copyright Infringement.**

        To properly plead a copyright infringement claim, Plaintiffs must allege "by what acts during what time" the infringement occurred. *See, e.g., Marvullo v. Gruner & Jahr AG & Co.*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (quotations and citations omitted). The complaint must set out the particular infringing acts with some specificity. *See id.* In *Marvullo*, this Court dismissed a copyright claim where the plaintiff alleged only that the defendant published a photograph beyond the scope of a license. *See id.* at 230-31. Here Plaintiffs allege little more.

        Although Plaintiffs allege that many of their photographs are registered as copyrighted material, the only allegations detailing the allegedly infringing acts state that Defendants have displayed on their web site, and "caused to be displayed on other sites, at least 26 images registered in Plaintiff's name for their sole benefit." Am. Comp. at ¶¶ 17, 41. *See also* Am. Comp. at ¶ 43 ("the offending uses are widespread and pervasive and appear on not less then [sic] twenty individual webpages."). Nowhere do Plaintiffs allege what particular images were used, or where they specifically appeared. Adding to the confusion, Plaintiffs admit that Defendants "removed" "certain of the complained of uses" even before the original complaint was filed. *See* Am. Comp. at ¶ 47.

        Because Plaintiffs fail to allege the particular infringing acts with the required level of specificity, counts 1 and 2 of the Amended Complaint fail to state claims upon which relief can be granted. Similarly, counts 3 and 4 fail to state claims because to adequately plead contributory or vicarious infringement, Plaintiffs must initially plead a direct infringement, which they have failed to do. *See Marvullo*, 105 F. Supp. 2d at 229 (addressing claim for

contributory infringement).   Moreover, Plaintiffs do not allege anywhere in the Amended

Complaint that Getz actually participated in the allegedly infringing conduct, as required to plead

a claim for contributory liability.  *See id.* at 230.  *See supra.*, Section I.A.

## CONCLUSION

For all the reasons stated above, the Amended Complaint must be dismissed for

lack of personal jurisdiction over Defendant Getz and for improper venue.   In the alternative,

venue should be transferred to the Eastern District of Wisconsin.  As a second alternative, counts

1-4 and 8 of the Amended Complaint must be dismissed for failure to state a claim upon which

relief can be granted.

BUYSEASONS, INC. and JALEM GETZ

DATE: January 22, 2008                By:   s/ Yonaton Aronoff

Peter N. Wang (#9216)
Yonaton Aronoff (#3492)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York  10016
(212) 682-7474
(212) 687-2329 fax

Frank W. DiCastri
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin  53202
(414) 271-2400
(414) 297-4900 fax
*ATTORNEYS FOR DEFENDANTS*