Edward Greenberg, Esq. (ECG 5553)
EDWARD C. GREENBERG, P.C.
570 Lexington Ave.
New York, NY 10022
(212) 697-8777

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x          Index No:
07CV10967
TOM ARMA, TOM ARMA STUDIO, INC. &
TOM ARMA COSTUMES INC.


                              Plaintiffs,                    Hon. Robert W.
                                                             Sweet


      - against -


 BUYSEASONS INC., BUYCOSTUMES &
 JALEM GETZ

                              Defendants.

------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR,
IN THE ALTERNATIVE TRANSFER VENUE**

# TABLE OF AUTHORITIES

## CASES

*AI International Corporate Holdings Inc. v Surgicare Inc.*,
2003 US Dist LEXIS 20561 No 03 Civ 2481 (SDNY Nov. 17 2003)     3-4

*AGR Fin., LLC v. Ready Staffing Inc.*,
99 F.Supp. 2d 399 (S.D.N.Y. 2005)     7

*Alvatar Gessler-J.A. Baczewski Int'l Inc. v Sobieski DestyLarnia S.A.*
2007 U.S. Dist. LEXIS 32321     7

*American Homecare Federation, Inc. v. Paragon Scientific Corp*,
27 F. Supp. 2d 109 (D. Conn. 1998)     12

*Animation Station, Ltd. v. The Chicago Bulls LP*
992 F. Supp. 382 (S.D.N.Y. 1998)     18

*Baggs v. Little League Baseball, Inc.* 2007
NY Slip Op 27310     12

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*
902 F.2d 194 (2d Cir.)., 1990     11

*Barnaby Music Corp. v. Catoctin Broadcasting Corp of New York*,
1988 U.S. Dist. LEXIS 15394, (SDNY 1988)     22

*Bense v. Interstate Battery System Inc.*,
683 F.2d 718 (2d Cir. 1982)     7

*Boris v. Bock Water Heaters, Inc*.
3 Misc. 3d 835  (Supreme Court of New York, Suffolk County, 2004)     10

*Brown v. Califano*,
75 F.R.D. 497 (D.D.C. 1977)     20

*Calloway v. The Marvel Entertainment Grop*,
1983 Copyright L.Dec. (CCH) P 25,5570 (S.D.N.Y. 1983)     19

*Chestnut Ridge Air, Ltd. V. Sky Harbour Aircraft*
2006 NY Slip Op 26362     11, 12

*Chew v. Dietrich*,
143 F.3d 24     15

*Citigroup Inc. v. City holding Co.*,
97 F.Supp. 2d 549 (SDNY 2002).                                         11

*D.H. Blair & Co. Inc. v. Gottdiener*,
462 F.3d 95                                                           3, 16

*Demetriades v. Kaufmann*
690 F.Supp 289, 293 (S.D.N.Y. 1988).                                   21

*Deutsche Bank Securities, Inc., v. Montana Board of Investments*
7 NY3d 65 (2006)                                                       11

*Elite Parfums Ltd. v. Rivera*
872 F.Supp 1269 (SDNY 1995)                                            4

*Engel v. Wild Oats, Inc.*
664 F.Supp. 1089 (S.D.N.Y 1986)                                        21

*Franklin Electronic Publishers, Inc. v. Unisonic Products Corporation,*
763 F.Supp. 1 (SDNY, 1991)                                            15, 21

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005)                                            13

*Gartner v. Snyde*r
607 F.2d 582 (2d Cir. 1979)                                            13

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
443 F.2d 1159 (2d Cir., 1971)                                          21

*Hellex Car Rental Systems Inc. v Dollar Systems Inc*
2005 U.S. Dist. LEXIS 33858 (EDNY 2005)                                3

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*
138 F.Supp. 2d 449 (S.D.N.Y. 2000)                                    13, 15

*Int'l Private Satellite Partners L.P. v Lucky Cat Ltd*.
975 F.Supp. 483 (W.D.N.Y. 1997).                                       9

*Iragorri v. United Tech Corp*.,
274 F.3d 65 (2d Cir. 2001)                                             6

*K.C.P.L., Inc. v. Nash*
1998 U.S. Dist. LEXIS 18464 (S.D.N.Y. Nov 24, 1998).                   12

*Karl Koch Erecting Co. v New York Convention Ctr. Dev. Corp*
838 F.2d 656 (2d Cir. 1988)                                              3

*LSP Kendall Energy LLC v Dick Corporation*
2003 US Dist LEXIS 12576 (2003 SDNY)                                     6

*Lauratex Textile  Corp. v. Allton Knitting Mills, Inc.*,
517 F.Supp. 900 (S.D.N.Y. 1981)                                         21

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*,
456 F.Supp. 531 (S.D.N.Y. 1977), aff'd, 592 F.2d 651 (2d Cir. 1978).    21

*M/S Bremen v Zapata Off-Shore Co.*,
407 U.S. 1                                                               3

*Mattel, Inc. v Adventure Apparel,*
2001 U.S. Dist LEXIS 3179 (S.D.N.Y. Mar. 22 2001)                       15

*Nanopierce Techs., Inc v  Southride Capital Mgmt LLC*
2003 U.S. Dist. LEXIS 21858 SDNY Dec 4, 2003)                            9

*National Football League v. Miller*
54 U.S.P.Q.2d 1574,                                                     13

*New Angle Pet Products, Inc. v. MacWillie's Golf Products Inc.*
2007 U.S. Dist. LEXIS 46952 13 (SDNY June 28, 2007)                  13, 15

*New Moon Shipping Co., Ltd v MAN B &W Diesel* AG
121 F.3d 24 (2d Cir. 1997)                                         3, 16, 18

*New York Chinese TV Programs Inc. v. U.E. Enterprises,*
1991 U.S. Dist. LEXIS 9075 (SDNY 1991)                                  21

*Packer v TDI Systems*,
959 F.Supp. 192                                                         11

*Peterson v Spartan Indus.*,
33 N.Y.2d 463                                                          10

*Retail Software Services, Inc. v. Lashlee*,
854 F.2d 18 (2d Cir. 1988)                                             14

*Roby v. Corp of Lloyd's*
996 F.2d 1253 (2d Cir. 1993)                                        4 , 7 , 8

*Rubin v., City of New York*
2007 U.S. Dist LEXIS 23003 (S.D.N.Y. Mar. 29, 2007)                13

*Shapiro, Bernstein & Co. v. H.L. Green Company*,
316 F.2d 304, 307 (2d Cir. 1963)                                   22

*Southern Nights Music Co. v. Mose*s
669 F.Supp. 305 (C.D.Cal 1987)                                     22

*Stewart Organization, Inc. v. Ricoh Corp.*
487 U.S. 22                                                         2

*Third Ave Trust v SunTrust Bank*
163 F.Supp. 2d 215 (SDNY 2001)                                      4

*Thomas Publ'g Co. v. Indus. Quick Search, Inc.*,
237 F.Supp. 2d 489 (SDNY 2002)                                  11, 13

*TSR Silicon Resources, Inc. v Broadway Com Corp.*
2007 U.S. Dist. LEXIS 92121 (SDNY 2007)                             2

*Uebler v. Boss Media*,
363 F. Supp 2d 499 (EDNY 2005)                                     12

*Weingrad v. Telepathy, Inc.*
2005 U.S. Dist. LEXIS 26952 (2005, S.D.N.Y.)                     7, 9

*Weiss v. Columbia Television Inc.*,
801 F. Supp. 1276 (SDNY 1992)                                      2

*Zippo Mfg. Co. v. Zippo Dot Com, Inc*.
952 F. Supp. 1119                                                 12

**RULES**

Rule 11                                                            1

CPLR 302(a)(1)
                                                                 stet

**TABLE OF CONTENTS**

**I.  Introduction**                                                       **1**

**II.  The Forum Selection Clause**                                        **2**

    **A.  The Forum Selection Clause Requires This Case To Be Tried In the Southern District of New York**                                       **2**

    **B.  The Termination of the Contract Does Not Terminate the Forum Selection Clause**                                                        **6**

    **C.  The Forum Selection Clause Operates To Grant Jurisdiction and Venue Over Defendant Jalem Getz**                                      **9**

**III.  Personal Jurisdiction**                                            **10**

    **A.  Proper Standard For Objections To Personal Jurisdiction Raised Prior To Discovery**                                                    **10**

    **B.  Personal Jurisdiction is Proper Under CPLR 302(a)(1)**           **11**

    **C.  Personal Jurisdiction is Proper Against Defendant Jalem Getz Under CPLR 302(a)(1)**                                                  **14**

    **D.  Due Process**                                                   **15**

**IV.  Defendants Motion for Transfer of Venue**                           **16**

**V.  The Copyright Claims**                                               **18**

    **A.  The Copyright Claims Are Valid**                                **18**

    **B.  Personal Liability for Defendant Getz**                         **21**

**Conclusion**                                                             **22**

Plaintiffs submit the within memorandum of law in reply to defendants' motion to dismiss the complaint or in the alternative, to transfer venue.  The Southern District of New York is the proper venue for this action under the forum selection clause agreed upon by the parties in the written agreement dated, May 24, 2004.   In any event jurisdiction and venue in the Southern District of New York is (still) proper.  The action ought not be transferred to the Eastern District of Wisconsin as the defendants or one or more of them, have not met their burden of showing "exceptional facts" warranting such a transfer.  Finally plaintiffs have more than met their pleading requirements as to jurisdiction, venue and all claims for relief brought in their Amended Complaint.

## I.  Introduction

Plaintiffs are the creators and licensors of Tom Arma Costumes and all of the intellectual property associated therewith.  On May 24, 2004 plaintiffs and defendants entered into a written agreement whereby defendants agreed to promote and sell Halloween costumes created by the plaintiffs worldwide through their website.  Plaintiffs license their intellectual property including but not limited to, photographic images and costumes, worldwide and have earned substantial income thereby for many years.  Such agreement expired on November 15, 2007.

The within action was brought on December 3, 2007 and results from the many infringements of plaintiffs' intellectual property rights (trademark and copyright) by the defendants (both pre and post the filing of litigation). Plaintiffs further allege with particularity, the causes of action sounding in breaches of the written, commercial agreement between the parties.

Notwithstanding plaintiffs' efforts pursuant to Rule 11 to obviate litigation, the filing of suit was necessitated by the prior contractual breaches as set forth in the complaint and the nature of

the copyright and trademark infringements.  Defendants ceased some, but not all of its infringing

activities prior to suit as a direct result of plaintiffs' pre-suit efforts. .  As set forth hereinbelow,

infringing activities continue to date.

All parties are sophisticated in the worldwide marketing, design and distribution of

costumes and have earned substantial sums thereon.


## II.  The Forum Selection Clause
### A. The Forum Selection Clause Requires This Case To Be Tried
### In the Southern District of New York

In the May 24, 2004 commerical agreement between Tom Arma Costumes, Inc. and

BuyCostumes Inc, the parties agreed and ***specifically consented to the jurisdiction and venue of***

***this Court.*** Paragraph 9.2 of the agreement between the parties, which states:

"This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York applicable to contracts entered into and to be wholly performed within the State of New York.  In the event of any claim or controversy arising under this Agreement, the parties hereto hereby irrevocably submit to the personal jurisdiction of the Federal and State courts located in the   County of New York, State of New York and hereby waive any objection thereto on the basis of lack of venue, forum non conveniens or any similar-type grounds."

Such agreement is annexed as exhibit "D" to plaintiff's complaint and referenced in paragraph

"35" of said complaint.

Forum Selection Clauses are generally treated with great deference in the Second Circuit.

Where parties "agreed to a forum selection clause restricting the would be plaintiff to a particular

venue, that expressed preference will loom large in the Court's calculus." *TSR Silicon*

*Resources, Inc. v Broadway Com Corp.* 2007 U.S. Dist. LEXIS 92121 (SDNY 2007). *See also:*

*Weiss v. Columbia Television Inc.*, 801 F. Supp. 1276, 1278 (SDNY 1992) ("The Second Circuit

has a strong policy of enforcing forum selection agreements."); *Stewart Organization, Inc. v.*

*Ricoh Corp.* 487 U.S. 22, 29 (1988) ("A forum selection clause will be a significant factor that

figures centrally in analysis… of a venue dispute."); *Hellex Car Rental Systems Inc. v Dollar Systems Inc* 2005 U.S. Dist. LEXIS 33858 (EDNY 2005) ("A party's expressed preference for a forum in a forum selection clause is entitled to substantial consideration and the party opposing application of a valid clause must demonstrate exceptional facts explaining why he should be relieved from his contractual duty.").

Most importantly the Second Circuit gives substantial deference where, as here, the two parties involved in the contract are both sophisticated commercial parties. *See eg, New Moon Shipping Co., Ltd v MAN B &W Diesel* AG121 F.3d 24, 29 (2d Cir. 1997) (citing to *M/S Bremen v Zapata Off-Shore Co*., 407 U.S. 1, 12, and stating, "The Second Circuit gives substantial deference to forum selection clauses, particularly where the choice of forum was made in an arms length negotiation by experienced and sophisticated businessmen."). It cannot be disputed that defendants BuySeasons and BuyCostumes are sophisticated commercial entities, who enter into many such agreements in the course of their business.

Though forum selection clauses are presumptively valid in the Second Circuit there are a few circumstances in which forum selection clauses are held to be invalid, none of which apply to this case. The forum selection clause is generally upheld when it, "is reasonably communicated, not obtained through fraud or overreaching and not unreasonable or unjust," *D.H. Blair & Co. Inc.  v. Gottdiener*, 462 F.3d 95, 103-04. *See also*: *Karl Koch Erecting Co. v New York Convention Ctr. Dev. Corp* 838 F.2d 656, 659 (2d Cir. 1988) ("It is well established that forum selection clauses will be enforced unless it clearly can be shown that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.").[1]  Both parties here willingly agreed to the forum selection clause.  No fraud was

---

[1] It should also be noted that this district has consistently held that a party seeking relief from a forum selection clause is required to demonstrate exceptional facts justifying relief from contractual duty. *See eg AI International*

3

employed to obtain it and New York is hardly a burdensome venue for any commercial party as the parties regularly do business in this State.

When deciding whether the application of a forum selection clause is unjust the court takes into account three factors.  "A court should consider whether:  (1) the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum…(2) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy (3) the clause contravenes a strong public policy of the forum state." *Roby v. Corp of Lloyd's* 996 F.2d 1253, 1363 (2d Cir. 1993).  Of the three factors the first is the only one of any real consequence in the present action.

A plain reading of the agreement, limited to its four corners supplies the reader with the clear intent of the parties, to wit that defendants would market to consumers, *world-wide*, including New York plaintiffs' intellectual property:

**WHEREAS,**  the Distributor (defendants) is the *world's largest on-line retailer of children's costumes; (emphasis added)*

 **WHEREAS,** Arma wishes to make the Distributor the *exclusive seller on-line, direct to consumers ("Consumers") of the Signature Collection through the term of this Agreement; (emphasis added);*

And at Paragraph "1" entitled "Fulfillment Services"  In addition, during the cal year 2005 the Distributor shall be the *exclusive distributor* for the Company's complete line of children's costumes ***in the territory of North America (including the US, Canada and Mexico) and Puerto Rico***, except for Spencer Gifts in its own retail stores. (emphasis added)

---

*Corporate Holdings Inc. v Surgicare Inc.*, 2003 US Dist LEXIS 20561 No 03 Civ 2481, (SDNY Nov. 17 2003), *Third Ave Trust v SunTrust Bank* 163 F.Supp. 2d 215 220-21 (SDNY 2001) *Elite Parfums Ltd. v. Rivera* 872 F.Supp 1269 (SDNY 1995)

It cannot be seriously argued that a trial in the Southern District of New York, a location wherein defendants specifically represented to plaintiffs it would do business, would deprive any of the defendants of their day in Court. BuySeasons Inc., the parent company of BuyCostumes is an exceptionally successful business. According to their website, "BUYSEASONS is the world's largest retailer and supplier of Costumes and Halloween products on the Internet. In 2006, 1 out of 3 costumes sold online was delivered by BUYSEASONS." The retention of New York counsel and the defense of this action in the Southern District of New York for such a successful corporation cannot possibly be deemed a "substantial inconvenience". Presumably, defendants retained New York counsel to advise them and review the subject agreement prior to its execution. Defendant Jalem Getz is also, upon information and belief, possessed of more than sufficient finances to obtain separate counsel if defendants' current counsel believes that representation of all defendants be one firm is inappropriate. No such claim nor one of financial hardship was made by defendants' counsel and there is no basis to believe that Mr. Getz will need pay for counsel out of his own pocket..

In an attempt to sway the court to transfer venue to Wisconsin, defendants, in their motion at page 20 go so far as to allege that the "means test" favors the defendants. Such proposition is laughable. Defendants induce plaintiffs into the business relationship by avering that it is "world wide" "the world's largest…" and obtains a worldwide territory. Plaintiff is a single individual who admittedly, employs his wife Julie Arma. Perhaps defendants ought not make representations which when served it now denies.

The parties in this case, with the exception of Mr. Getz are all sophisticated, well financed corporations who are more than capable of financing litigation in the Southern District

of New York.  With respect to Mr. Getz, counsel for the defendant has made it clear that "money is of no object" for his client.  *See* Declaration of Edward Greenberg. at paragraph 5.

A cursory review of the public record is enlightening.  As outlined in Declaration of Edward Greenberg attached hereto, BuySeasons was acquired by Liberty Media Corporation and/or Liberty Media Interactive in November of 2006.  Upon its acquisition, and according to a November 2006 prospectus, Mr. Getz was possessed of at least 466,142 shares of Liberty Media Corporation. A further inspection reveals that Mr. Getz boasts of the facts that he employs more than "400 seasonal employees" through BuySeasons Inc.  *See* Declaration of Edward Greenberg and Exhibit A attached thereto.  It appears that Mr. Getz is possessed of more than sufficient assets to retain counsel in the event corporate counsel refuses to represent him.

Suffice to say that "the Court of Appeals has made clear that an action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."  *Iragorri v. United Tech Corp*.,  274 F.3d 65, 74-75 (2d Cir. 2001).

Where, as here, the parties are sophisticated business entities that willingly entered into agreements designating the Southern District of New York as their venue for all disputes the court found that there could be "no serious suggestion that litigation here would deprive defendant of its day in court." *LSP Kendall Energy LLC v Dick Corporation* 2003 US Dist LEXIS 12576, (2003 SDNY)  There is no great inconvenience for any of the defendants.  They will not be denied their day in Court by the trial of this case in the venue they agreed to in their contract with the plaintiffs.  Thus, the forum selection clause should not be disturbed.

### B.  The Termination of the Contract Does Not Terminate the Forum Selection Clause

At page 12 of the Defendants' Memorandum of Law, defendants' aver that venue is improper in the Southern District of New York as to BuySeasons.  Defendants claim that because

the agreement has expired the forum selection clause should no longer apply to the parties.  This notion conflicts with recent case law in this District which states, "forum selection clauses are enforceable even when the relevant agreement has been terminated, so long as the substance of the action is related to the original agreement." *Alvatar Gessler-J.A. Baczewski Int'l Inc. v Sobieski DestyLarnia S.A.* 2007 U.S. Dist. LEXIS 32321 at *12 *See also: Bense v. Interstate Battery System Inc*., 683 F.2d 718, 720-22 (2d Cir. 1982) (enforcing the forum selection clause because the "gist" of plaintiff's claim involved an alleged wrongful termination of the agreement where the "forum selection clause was part of the bargain plaintiff freely entered.); *AGR Fin., LLC v. Ready Staffing Inc., 99 F.Supp*. 2d 399, 402 (S.D.N.Y. 2005) (holding forum selection clause in expired agreement governed claims arising out of that contract); *Roby v. Corp. of Llloyd's,* 996 F.2d 1353, (forum selection clause applicable to claims arising out of contractual relationship was not restricted to pure breaches of contracts but also covered related claims).

Most significantly where the parties' business relationship arises solely out of the contract containing the forum selection clause, this Court has found the clause to hold up after the termination of the contract.. *See*; *Weingrad v. Telepathy, Inc.* 2005 U.S. Dist. LEXIS 26952 (2005, S.D.N.Y.) *9-10 ("Parties to a contract are bound by that contract's forum selection clause even after the contract has terminated where as here, the plaintiff's claims involve rights arising out of the contract and the entire business relationship between the parties stems from the contract.")

In the case at bar the parties' business relationship arises solely from the May 24, 2004 contract.  Contrary to the defendants assertion that all of the plaintiffs claims are "non-contractual disputes", the copyright and trademark infringement claims while independent all arise out of the contract.  The only reason that defendants had the right to use the intellectual

property in question is because of the rights granted them in the May 24, 2004 agreement.  At the very least these claims are "related claims" like those in *Roby v Corp of Lloyd's*, *Id*.

The May 24, 2004 agreement at paragraph 8 states: (emphasis added)

"The company (Arma) shall have the sole discretion to determine the trademarks and/or service mark(s) (including designs and logos associated therewith) for the On-Line Store (the "Company Marks") and for packaging of the Ordered Products.  The Company shall be the sole owner of all right, title and interest in and to Company Marks.  ***During the term of the Agreement,*** Company grants Distributor ***a limited license to use the Company Marks in promotional materials***, provided that the Company has approved of such materials in writing prior to their being distributed to the public.  Nothing contained in this Agreement shall be construed as an assignment or grant to Distributor of any right, title or interest in or to Company Marks other than such promotional use and in the carrying out of its obligations hereunder.  All rights relating to the company Marks are expressly reserved by Company, except for the limited license granted above to Distributor, and ***all good will associated with Company Marks inures solely to the benefit of the Company***.  No other trademarks or logos shall appear on the On-Line Store or any packaging of, or inserts included with the Ordered Products without the Company's prior written consent, which may be given or withheld on its own discretion.

By continuing to use plaintiffs' marks after the term of the agreement the defendants have violated the agreement.  Also by using Tom Arma's name and marks on their website defendants stole the good will associated with the plaintiff and its marks and used it for their own benefit.

When an internet search is done in Google for "Tom Arma" defendants' website is the second site that appears, after only Mr. Arma's own site. (annexed hereto as Exhibit "A")  When a potential customer then clicks on the defendants' link it takes them to the BuyCostumes web page.  It states that defendants' are no longer doing business with Mr Arma and provide links to purchase *alternative products* from their websites.  By doing so plaintiffs are cashing in on the good will associated with the Tom Arma mark in clear violation of the agreement.

Finally defendants are using plaintiffs' marks and other intellectual property subsequent to the filing of the within action  in advertisements, coupons and banner ads on other affiliate websites.  (annexed hereto as Exhibit "B")  These are all clear violations of the agreement and rights which arose out of the agreement.

8

### C.  The Forum Selection Clause Operates To Grant Jurisdiction and Venue Over Defendant Jalem Getz

Case law in this jurisdiction also indicates that jurisdiction and venue is proper as to Jalem Getz, as he is a party who is not only "closely" but *inextricably* associated with the transaction and the defendants.  As the president of BuySeasons Inc. and the signatory on the contract between the parties Mr Getz, is intimately tied to this contract and the ongoing transactions by and between the parties.  "…it is well established that a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses." *Weingrad v. Telepathy, Inc*. 2005 U.S. Dist. LEXIS 26952 (2005, S.D.N.Y.) (finding forum selection clause applied to non-parties who were "closely related" and "acted in concert" with parties to the contract.) *See also Int'l Private Satellite Partners L.P. v Lucky Cat Ltd*. 975 F.Supp. 483, 485-6 (W.D.N.Y. 1997).

"In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." *Nanopierce Techs., Inc v Southride Capital Mgmt LLC* 2003 U.S. Dist. LEXIS 21858 SDNY Dec 4, 2003).  Mr. Getz did not just sign the agreement on behalf of BuySeasons.  and as such,  was acutely aware of the forum selection clause contained therein,   he was also intimately involved in the day to day affairs of the defendants and the dealings with these plaintiffs.  At this stage in the litigation, pre-discovery, the breadth of Mr. Getz's involvement is more than sufficient in this regard..

Plaintiff has personally observed Mr. Getz's participation in the form of emails to plaintiffs regarding their distribution agreements, the requirement of his personal approval of any discounts offered by BuyCostumes, personal discussion, initiated by Getz involving business opportunities at Target and QVC, his notifications to plaintiffs of knock-offs and his personal participation in the  organization of Tom Arma promotions through BuyCostumes.  Getz was

9

even responsible for the return of remaining inventory to the plaintiffs at the end of the contract term.  *See* Declaration of Julia Arma, attached hereto.

It cannot be argued that he was unaware of the contracts termination.  Jalem Getz was involved at every level of the business from the beginning of the contract until the date of its termination.  He helped negotiate the contract the terms of  which he is now seeks to avoid.  Mr. Getz is intimately tied to this contract and the business of BuySeasons and should be subject to the agreement's valid forum selection clause.

### III.  Personal Jurisdiction
### A.  Proper Standard For Objections to Personal Jurisdiction Raised Prior to Discovery

Assuming, arguendo, that the forum selection clause does not apply, defendants' motion to dismiss still fails as personal jurisdiction can be found over all defendants in this action.  In any case, and contrary to defendants' assertions, plaintiffs have certainly satisfied their pleading burden as it relates to personal jurisdiction.

Defendants, in their memorandum of law repeatedly mischaracterize plaintiffs' obligation at this point in the litigation as it relates to pleading personal jurisdiction.  Because of the tone of defendants' memorandum of law we feel it necessary to delineate the proper standard for plaintiffs' response to a claim of lack of personal jurisdiction when such claim is made prior to any discovery:

> Where a defendant moves to dismiss on jurisdictional grounds before discovery is complete, the opposing party need only demonstrate that facts "may exist" whereby [jurisdiction would be proper] to defeat the motion.  It need not be demonstrated that they do exist.  Such a showing must await discovery.  A prima facie showing of jurisdiction is not even required, particularly for one seeking to confer jurisdiction under the long arm statute.  All that is required is that the opposing party made a sufficient start.
> *Boris v. Bock Water Heaters, Inc*. 3 Misc. 3d 835  (Supreme Court of New York, Suffolk County, 2004) *citing to Peterson v Spartan Indus*., 33 N.Y.2d 463, 466

"If jurisdiction is challenged prior to discovery, as in the present case, the plaintiff may defeat the motion by a good faith pleading of legally sufficient allegations" *Ball v. Metallurgie Hoboken-Overpelt, S.A.* 902 F.2d 194, 197 (2d Cir.)., 1990   Further "Where no discovery and no evidentiary hearing as to jurisdictional matters has been conducted, the plaintiff 'need only allege facts constituting a prima facie showing of personal jurisdiction,' and the pleadings and affidavits must be construed in the nonmoving party's favor." *Packer v TDI Systems*, 959 F.Supp. 192

Nevertheless, jurisdiction is proper in the Southern District of New York as to all defendants.

## B.  Personal Jurisdiction Is Proper Under CPLR 302(a)1

Under the traditional analysis a person or business would have to be physically present in New York in order to be found to be "transacting business" therein.  However, New York courts have held that given the current state of technology jurisdiction "may be established through non-traditional methods… an interactive website may constitute solicitation activity to support a finding of jurisdiction." *Chestnut Ridge Air, Ltd. V. Sky Harbour Aircraft* 2006 NY Slip Op 26362 *Citing to Thomas Publ'g Co. v. Indus. Quick Search, Inc*., 237 F.Supp. 2d 489, 492(SDNY 2002); *Citigroup Inc. v. City holding Co.*, 97 F.Supp. 2d 549, 566 (SDNY 2002).

This comports with the determination by the New York Court of Appeals that instant messaging and e mail "enable a party to transact enormous volumes of business within a state without physically entering it." *Deutsche Bank Securities, Inc., v. Montana Board of Investments* 7 NY3d 65, 71 (2006).

The operative question in the case at bar then becomes "What is an interactive website?" Traditionally courts have applied a "sliding-scale" test in internet jurisdiction cases which seeks

to distinguish interactive from passive websites. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119.   Courts have attempted to delineate this scale into three tiers; a website that just includes the posting of information is a passive website and no personal jurisdiction may be found; a website where solely information is exchanged lies somewhere in between passive and interactive websites; and a highly interactive website is one which most closely resembles the definition of transacting business. *American Homecare Federation, Inc. v. Paragon Scientific Corp*, 27 F. Supp. 2d 109, 113 (D. Conn. 1998).   Such activities may include but are not limited to (1)sales; (2) solicitations; (3) acceptance of orders; (4) links to other sites; (5) product lists; and/or (6) the transmission of files. *See Id* at 114.

When a court has found a site to be highly interactive and business to have been conducted in the forum state, personal jurisdiction is generally granted. *See eg  Uebler v. Boss Media*, 363 F. Supp 2d 499 (EDNY 2005) (holding  that personal jurisdiction will be found when a "highly interactive" website enables internet users to order products.);   *Baggs v. Little League Baseball, Inc.* 2007 NY Slip Op 27310 (finding personal jurisdiction where internet users were able to order products via an interactive website);   *Chestnut Ridge Air, Ltd. V. Sky Harbour Aircraft* 2006 NY Slip Op 26362 (finding personal jurisdiction where customers could order, post questions and receive replies through a forum and otherwise participate in a virtual community that meets client needs).   In essence the court requires something more than the mere posting of information on a passive web site.   *K.C.P.L., Inc. v. Nash* 1998 U.S. Dist. LEXIS 18464 (S.D.N.Y. Nov 24, 1998).

Given the clearly interactive nature of the Defendants' sites and the business being done by same the question of personal jurisdiction becomes an easy one.   When a defendant operates "an interactive website accessible in New York, there is no inequity subjecting [defendant] to

12

personal jurisdiction in New York." *Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F.Supp. 2d 489, 492. *See also Hsin Ten Enter. USA, Inc. v. Clark Enters.* 138 F.Supp. 2d 449 (S.D.N.Y. 2000) (stating "Generally an interactive website supports a finding of personal jurisdiction over the defendant.")

CPLR 302(a)(1) states in relevant part that personal jurisdiction by acts of non-domiciliaries will lie when a "non-domiciliary... transacts any business within the state or contracts anywhere to supply goods or services in the state" and that the cause of action arises out of that transaction. The nature and extent of these business contacts are to be determined after discovery has been completed on the matter but we note that "302(a)(1) is a single act statute requiring but one transaction- albeit a purposeful transaction- to confer jurisdiction in New York." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).

Ultimately the question becomes, at what point may a defendant be deemed to be doing business for the purpose of 302(a)(1). To determine this, we respectfully direct the Court's attention to the recent Eastern District of New York Decision *New Angle Pet Products, Inc. v. MacWillie's Golf Products Inc* entered on June 28, 2007. 2007 U.S. Dist. LEXIS 46952. In *New Angle*, the court found that long arm jurisdiction was proper under 302(a)(1) for plaintiff's false advertising claim where such advertisements appeared on a website by which defendants transacted business in New York. In finding personal jurisdiction under CPLR 302(a)(1) the court stated that "there is an articuable nexus between Plaintiff's claims of false advertising and Defendant's on-line internet business because the alleged false advertising was displayed on Defendant's websites  where the on-line orders were submitted." *New Angle* at 10[2]

---

[2] *See eg National Football League v. Miller* 54 U.S.P.Q.2d 1574, (finding long arm jurisdiction under 302(a)(1) where the defendants website was interactive and allowed users to submit online orders); *Rubin v., City of New York* 2007 U.S. Dist LEXIS 23003 (S.D.N.Y. Mar. 29, 2007) (finding personal jurisdiction in a trademark infringement case where the website was interactive and where customers purchased allegedly infringing merchandise).

Here there is a much clearer nexus between the claims.  Though at this point we don't
know how much business is being done in New York we do know that the defendants website is
"highly interactive" and is viewable in New York.  It can be assumed, and we are certain that
discovery will show, that the defendants sold costumes in New York.  By placing this website on
the internet, making it viewable in New York and soliciting visitors to purchase their products in
New York, the defendants solicited business in New York.  Such solicitation for business
through the website constitutes the doing of business in New York   The website is also the basis
of the majority of the claims in this action.  The infringements were all published on the
defendants' websites or websites of their affiliates.  Similarly, defendants have used the website
to trade off the goodwill associated with Mr. Arma's trademarks.

Accordingly, should the Court find that the forum selection clause does not apply to
Plaintiffs' claims jurisdiction is also proper over BuyCostumes and BuySeasons under CPLR
302(a)(1).

### C.  Personal Jurisdiction Is Proper Against Defendant Jalem Getz
### Pursuant to CPLR 302(a)(1)

A non-resident corporate officer cannot avoid jurisdiction on the basis that he or she
engaged in an offending activity solely in the context of his or her corporate capacity. Personal
jurisdiction attaches when it is alleged that the officer is a primary actor who exercised control
over, and directly benefitted from, business that might have been transacted in New York. *Retail
Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988).

Jalem Getz exercises complete control over BuySeasons and personally benefits from its
success.  Plaintiffs, when dealing with BuySeasons dealt almost exclusively with Getz.  This
ranged from matters as important as distribution agreements to as small as copycat costumes.
Mr. Getz is involved in every facet of the business.

14

Alternatively, jurisdiction is proper against Jalem Getz under the alter ego theory. Specifically, " "Piercing the corporate veil is justified when the corporate entity is the alter ego of the person sought to be held liable because that person so dominates the corporation that it served his interests rather than its own." *Franklin Electronic Publishers, Inc. v. Unisonic Products Corporation*, 763 F.Supp. 1 (SDNY, 1991) *See also Gartner v. Snyde*r 607 F.2d 582, 586 (2d Cir. 1979).

### D.  Due Process

In *Chew v. Dietrich*, 143 F.3d 24, the Second Circuit summarized the due process requirements for exercising personal jurisdiction over foreign defendants thusly:

> The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  In determining whether minimum contacts exist, the court considers the relationship among the defendant, the forum, and the litigation.  To establish the minimum contacts necessary to justify specific jurisdiction, the plaintiff first must show that his claim arises out of or relates to defendants contacts with the forum state.  The plaintiff must also show that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there.  If the plaintiff satisfies these requirements, the court also considers whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable under the circumstances of the case.

With that standard in mind New York courts have found personal jurisdiction to be fair under the due process clause on many occasions similar to this one.  *See eg Mattel, Inc. v Adventure Apparel,* 2001 U.S. Dist LEXIS 3179 (S.D.N.Y. Mar. 22 2001) (holding that a single internet sale to the forum state satisfied the due process requirement in a trademark infringement case.); *Hsin Ten Enter. USA, Inc. v. Clark Enters*. 138 F. Supp. 2d 449 (displaying allegedly infringing trademark on website used to sell products to forum state residents satisfied due process requirement); *New Angle Pet Products, Inc. v. MacWillie's Golf Products Inc,* 2007 U.S. Dist.

15

LEXIS 46952 (display of false advertisement on a website through which products were sold to New York residents satisfied due process requirement).

Due Process is no concern in the case at bar.

### IV. Defendants Motion for Transfer of Venue

Once again the Second Circuit gives substantial deference to commercial parties who contract upon a specified venue. *New Moon Shipping Co., Ltd v MAN B &W Diesel* AG121 F.3d 24, 29 (2d Cir. 1997). Rarely is a plaintiffs choice of venue disturbed when there is, as here, a basis for jurisdiction in the venue in which the action has been brought, and is ordinarily entitled to considerable weight. *See eg D.H. Blair & Co. Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)

Plaintiffs engage in national and international business, resulting in the licensing and marketing of their intellectual property and the sale of their products all over the world. Both international and national parties are reluctant to agree to jurisdiction in the State of Arizona, plaintiff's home state. It is well known that the 2nd Circuit, and the Southern District of New York in particular, is a jurisdiction which regularly deals with sophisticated intellectual property and copyright licensing actions as well as complex business issues.

Relying on the 2nd Circuit's experience in these matters, plaintiffs' contracts employ New York as a *neutral* jurisdiction in which to ground venue for any disputes that may arise. The plaintiffs do not consent to jurisdiction and venue in any state other than New York. This forum selection clause was a consequence of doing business with the plaintiff, and has been for numerous other third parties. Because of the worldwide nature of plaintiffs' licensing, they cannot afford to be dragged into court wherever their contractual partners may reside. The

16

defendants were aware of the forum selection clause and the plaintiffs requirement that venue be grounded in the state and county of New York and agreed to same.

Furthermore, the nature of the business relationship between the parties is one of national *and international scope*. The plaintiffs weren't contracting for the sale of its costumes in Wisconsin *only* or even, primarily. They contracted for the sale, distribution and promotion of its costumes *worldwide* by the defendants who represented that such contractual obligations could be satisfied by them. If the defendants didn't regularly do business in New York the plaintiffs would never have contracted with them. These are all sophisticated commercial parties. The notion that defendants now, after readily agreeing to the forum selection clause, find New York to be an unfair venue is patently absurd. If defendants did not in fact possess the resources market worldwide and be subject to the New York Courts, it ought not have so represented. If Mr. Getz's mouth has exceed his grasp, then it is the defendants who need be held responsible.

In its memorandum, defendants discuss a six part test that every Court should go through when deciding on a transfer of venue motion. In addition to their baseless claim that the balance of means favors the plaintiffs discussed *supra*, defendant makes several other claims in its brief as to what plaintiff can and cannot prove. At page 20 defendants argue that "New York appears to be inconvenient for both Plaintiffs and Defendants alike." Defendants are, of course, free to state that New York is now "inconvenient" to them as there is a dispute which needs resolution. There is not the slightest indication that the plaintiffs or any one of them would ever have consented to jurisdiction in Wisconsin. Similarly there is no indication that defendants refused to consent to the jurisdiction and venue of New York.

Similarly at page 21 the defendants state that, "it seems likely that none of the non-party witnesses, for Plaintiffs or Defendants can be compelled to appear in New York." With respect to the bulk of the claims, those being the copyright and trademark claims, the plaintiffs do not need the presence of defendants' employee to make its case for copyright infringements.

The elements to prove copyright and trademark infringement are very clearly delineated and plaintiffs' claims will not be diminished if not one of defendants' Wisconsin employees does not testify in New York.

In their analysis of the six factors to be considered by a Court on a motion for transfer of venue, the defendants also conveniently fail to discuss factor number six, the forum's familiarity with governing law. *Animation Station, Ltd. v. The Chicago Bulls LP* 992 F. Supp. 382, 384 (S.D.N.Y. 1998). As stated in the forum selection clause the governing law is that of the state of New York. Thus this factor favors the retention of venue in the Southern District.

In any event when there is a valid forum selection clause the existence of a more convenient venue for the defendant is not dispositive. In order for a court to disturb venue premised upon a valid forum selection clause the party questioning venue must present extraordinary facts that would justify a change in venue from the contractually agreed upon forum. *See eg, New Moon*, *Id.* Defendants' claims amount only to minor inconveniences such as the transport of witnesses and documents, nothing which rises to the level of extraordinary.

### V. The Copyright Claims
### A. The Copyright Claims Are Valid

At page 24 of the Defendant's Memorandum of Law In Support of Motion to Dismiss or to Transfer Venue, defendants' claim that, "plaintiffs' do not detail with specificity which images were infringed and how". Specifically defendants state "[n]owhere do Plaintiffs allege what particular images were used." Plaintiffs and counsel are bewildered.

"Rule 8 requires that plaintiff state in his infringement claim which specific original works are the subject of the claim, that plaintiff owns the copyright, that the works have been registered in compliance with the copyright statute and by what acts and during what time defendant has infringed the copyright". *See Calloway v. The Marvel Entertainment Grop*, 1983 Copyright L.Dec. (CCH) P 25,5570 (S.D.N.Y. 1983).  Plaintiffs, in paragraph 15 of the amended complaint, list which images were infringed and their corresponding copyright registration numbers.  Paragraph 15 of the amended complaint is reproduced below with added emphasis:

Original photographic images created by Arma ***and which serve as a predicate for those portions of this litigation seeking relief based on Title 17,*** have been registered and bear the below descriptions and registration numbers.  Copies of the registrations for the following registered images are annexed hereto collectively as Exhibit "A":

A.  "Black Cat" on June 9, 1999.  Copyright Registration VAu 461-037

B.  "Beaver", "Brown Bear", "Flamingo", "Koala", "Monkey", "White Rabbit"    and "White Tiger" on August 31, 1998.  Copyright Registration VA 975-629

C.  "Butterfly" on Copyright Registration VA 808-331

D.  "Dinosaur" on August 31, 1998.  Copyright Registration VA 942-007

E.  "Elephant"and "Panda" on August 31, 1998.  Copyright Registration VA 940- 306

F.  "Flower" on June 6, 2006.  Copyright Registration VA 634-642

G.  "Frog", "Gorilla", "Polar Bear" and "Zebra" on June 18, 1997.  Copyright Registration VA 852-517

H.  "Gingerbread", "Snowbaby" on October 2, 1996.  Copyright Registration VA  800- 720

I.  "Ladybug" on September 11, 1996.  Copyright Registration VA 808-331

19

J.  "Lion" on August 31, 1998.  Copyright Registration VA 940-698

K.  "Pumpkin" on September 1, 1998. Copyright Registration VA 940-750

L.  "Rhino", "Snow Monkey" on August 31, 1998.  Copyright Registration VA    940-611

M.  "Sheep" on September 11, 1996.  Copyright Registration VA 789-762

N.  "Skunk" on August 31, 1998.  Copyright Registration VA 941-135

Defendants also allege that plaintiffs failed to state where the infringing images were published by the defendants.  The Court's attention is respectfully directed to paragraph "41" of the amended complaint, wherein plaintiff states that defendant used, "at least twenty-six photographic images registered to Arma after the contract period had expired on multiple websites and in multiple advertisements."

Prior to the commencement of litigation, Mr. DiCastri, as counsel for the defendants, had been provided with specific examples of these infringements.  Such examples include images posted on BuySeasons and all affiliate sites and are attached hereto as Exhibit "B."  Furthermore, any attempt to list every infringement, at this early stage of the litigation, would have ultimately been incomplete.  Attached hereto as Exhibit "C" are infringements which have been discovered by plaintiff *since the amended complaint was filed* on both BuySeasons and their affiliate sites.

Rule 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to give "fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer."  *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C. 1977).  It cannot be argued that the plaintiffs failed to give fair notice of their claim in the complaint.  The specific copyrights infringed by the defendants were outlined in the complaint.  Numerous

conversations were had with counsel for the opposition as to the location and nature of the offending images.  The trail of attorney correspondence is lengthy.   Plaintiffs' registrations pre-date the offending/infringing usages

Finally, "on this motion the court must take plaintiff's allegations that defendant copied its copyrighted works as true.  A motion to dismiss is properly granted only if it is clear that no relief can be granted under any set of facts that could be proved consistently with allegations of the complaint."  *Franklin Electronic Publishers, Inc. v. Unisonic Products Corporation,* 763 F.Supp. 1, 10 (SDNY, 1991).  Plaintiffs have more then met their pleading burden as it relates to the copyright claims.  They have stated which images were infringed.  They stated they were infringed after the termination of the agreement by publication on BuySeasons, BuyCostumes and related websites, and that such infringement is ongoing.

## B.  Personal Liability for Defendant Getz

As previously stated, all of defendants claims herein arise from the contract.  Such claims include Mr. Getz's personal liability for copyright infringement.  An individual, including a corporate officer is personally liable for copyright infringement when he has the right and ability to supervise the infringing activity and a financial interest in it, or when he personally participates in the activity.  *New York Chinese TV Programs Inc. v. U.E. Enterprises,* 1991 U.S. Dist. LEXIS 9075 (SDNY 1991); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc*., 443 F.2d 1159, 1162 (2d Cir., 1971); *Engel v. Wild Oats, Inc.*664 F.Supp. 1089, 1093 (S.D.N.Y 1986); *Lauratex Textile  Corp. v. Allton Knitting Mills, Inc*., 517 F.Supp. 900, 904 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc*., 456 F.Supp. 531, 537 (S.D.N.Y. 1977), aff'd, 592 F.2d 651 (2d Cir. 1978).

One who with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be held liable as a contributory infringer. *Demetriades v. Kaufmann* 690 F.Supp 289, 293 (S.D.N.Y. 1988).  Vicarious liability attaches to an officer "if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities" *Barnaby Music Corp. v. Catoctin Broadcasting Corp of New York*, 1988 U.S. Dist. LEXIS 15394, (SDNY 1988) Liability can be imposed "even in the absence of actual knowledge that the Copyright Monopoly is being impaired" *Shapiro, Bernstein & Co. v. H.L. Green Company*, 316 F.2d 304, 307 (2d Cir. 1963), *Southern Nights Music Co. v. Moses* 669 F.Supp. 305 (C.D.Cal 1987).

Clearly the extent of Mr. Getz involvement will be the subject of considerable discovery by plaintiffs.  Mr. Getz seeks to avoid such discovery on the grounds that the results of same will be damaging to his defense.  Mr. Getz bereft of a legal defense, seeks to flee to Wisconsin in the hopes that Mr. Arma will be reluctant to spend additional resources to litigate in a foreign forum utterly unknown to him.

## Conclusion

In accordance with plaintiffs' argument stated herein we respectfully request the Court to deny defendants' Motion to Dismiss or to Transfer Venue in its entirety.


Dated:  February 5, 2007
New York, New York                                    By:   /s/  Edward C. Greenberg
                                                      Edward C. Greenberg (5553)
                                                      EDWARD C. GREENBERG P.C.
                                                      570 Lexington Ave. 17th Floor
                                                      New York, New York 10022

EXHIBIT C



## Tom Arma Costumes

When dressed in a Tom Arma costume, your child will elicit the cooing and cawing from strangers. Get affordable and adorable Tom Arma costumes from BuyCostumes with your free FabulousSavings coupon.

Spend at least $50 and you'll receive a 10% discount on Tom Arma Halloween costumes, such as Tom Arma dinosaur costumes or even a Tom Arma pumpkin costume.

Warm fuzzies will tickle you cozy when you see Tom Arma infant costumes like Snow Baby. This snowman

costume will touch your heart and bring a smile to your face. It comes with a padded white suit, lined booties, mittens, a plaid scarf, a headpiece with earmuffs and a top hat.

Bring out the cuddly side with Tom Arma costumes. The Koala Bear features a plush grey body suit with back snaps, lined booties, an attached tail and matching headpiece with pink-lined Koala ears and a front Velcro closure.

Close attention to detail is paid with the construction of a Tom Arma baby costume. Tom Arma is the choice for proud new parents who know how to have fun.

What's new, pussycat? Get a Tom Arma Black Cat costume from BuyCostume and you'll be purring over the price. This heirloom quality costume is completely lined with soft fleece.

The Tom Arma Flower costume is perfect for brightening up the mood and warmly invites the sunshine. Cheerful pink petals adorn the headpiece. There's a green body suit with back snaps. You'll also get cute little green socks.

Encourage your child to monkey around and satisfy the Curious George in them. Get them suited up in our Tom Arma monkey costume, Grape Ape. This purple-accented gorilla bodysuit comes with a hood, yoke, ears and mitts.

Pick up a Tom Arma Skunk, Butterfly, Lion & Lamb costume from BuyCostumes with your FS coupon.

## The Products of BuyCostumes

Tom Arma Gingerbread - Tinsel Tots Signature Collection
Tom Arma Gingerbread - Tinsel Tots Signature Collection
Tom Arma Girl's Spring Outfit Clothing Collection
Tom Arma Santa - Tinsel Tots Signature Collection
Tom Arma White Rabbit Signature Collection
Tom Arma White Rabbit Signature Collection
Tom Arma Brown Bear Signature Collection
Tom Arma Koala Bear Signature Collection
Tom Arma Koala Bear Signature Collection
Tom Arma Black Cat Signature Collection
Tom Arma Elephant Signature Collection
Tom Arma Elephant Signature Collection
Tom Arma Pumpkin Signature Collection
Tom Arma Flower Signature Collection
Tom Arma Flower Signature Collection
Tom Arma Frog Signature Collection

Tom Arma Gingerbread - Tinsel Tots Signature Collection
Tom Arma Girl's Spring Outfit Clothing Collection
Tom Arma Girl's Spring Outfit Clothing Collection
Tom Arma Santa - Tinsel Tots Signature Collection
Tom Arma White Rabbit Signature Collection
Tom Arma Brown Bear Signature Collection
Tom Arma Brown Bear Signature Collection
Tom Arma Koala Bear Signature Collection
Tom Arma Black Cat Signature Collection
Tom Arma Black Cat Signature Collection
Tom Arma Elephant Signature Collection
Tom Arma Pumpkin Signature Collection
Tom Arma Pumpkin Signature Collection
Tom Arma Flower Signature Collection
Tom Arma Frog Signature Collection
Tom Arma Frog Signature Collection

Adult Halloween Costumes | Alice in Wonderland Costumes | Childrens Costumes | Couples Halloween Costumes
Halloween Wigs | Harry Potter Costumes | Kids Halloween Costumes | Infant Halloween Costumes | Kids Animal Costumes
Disney Character Costumes | Funny Halloween Costumes | Costume Hands & Feet | Halloween Decorations | Halloween Masks
Halloween Party Favors | Pet Costumes | Star Wars Costumes | Superhero Costumes | Pirate Costumes | Plus Size Costumes
Horror Masks & Costumes | Princess Costumes | Pet Halloween Costumes | Tom Arma Costumes | Wizard of Oz Costumes





« Back to BuyCostumes.com on FabulousSavings.com

# BuyCostumes.com Coupons (online only)

GET 10% OFF $50 OR MORE! (FS Exclusive)

**Full Description:**  GET 10% OFF $50 OR MORE! (FS Exclusive) (View Coupon Terms and Conditions)

**Coupon Code:** FABU4U

**Expiration:**  Limited time offer

« Back to BuyCostumes.com on FabulousSavings.com

**HELP** View our help page | Coupon not working? ✉ Get Coupons delivered to your inbox ≈ Subscribe to our RSS Feed

Tom Arma Kids Costumes



Tom Arma Childrens Costumes                                    Dissatisfied? Let us know.

**Search Products**

[          ] Find

Most Popular Searches.
boys
boots
lion
elf
egyptian

Home

**Other Items**
Accessories & Make-Up
BOYS: Baby/Infant Boys
BOYS: Boy's Closeouts
BOYS: Classic Boys
BOYS: Historical Boys
BOYS: Superheroes Boys
BOYS: Toddlers Boys
GIRLS: Baby/Infant Girls
GIRLS: Classic Girls
GIRLS: Toddlers Girls

## LATEST COUPONS & DISCOUNTS    ⟳ Updated Daily!

**Fright Catalog** - A Fangtastic Offer from FrightCatalog.com! Slash $5 off any order of $100 or more! Enter offer code FANG5 at checkout.   Limited Time Only - Use Coupon

**BuyCostumes.com** - Code: love08 for Free Shipping on orders $50 or more. See site for full details.   Expires on: 01/28/2008 - **Use Coupon**

**BuyCostumes.com** - Code: love08 for Free Shipping on orders $50 or more. See site for full details.   Expires on: 01/28/2008 - **Use Coupon**

**BuyCostumes.com** - Code: love08 for Free Shipping on orders $50 or more. See site for full details.   Expires on: 01/28/2008 - **Use Coupon**

**BuyCostumes.com** - Code: love08 for Free Shipping on orders $50 or more. See site for full details.   Expires on: 01/28/2008 - **Use Coupon**

## See All Coupons & Discounts

**Most Popular Categories**


BOYS: Baby/Infant Boys


BOYS: Boy's Closeouts


BOYS: Superheroes Boys


BOYS: Toddlers Boys


GIRLS: Baby/Infant Girls


GIRLS: Classic Girls


GIRLS: Toddlers Girls

About Us   Contact Us   Coupons & Discounts   Privacy Policy   Site Map
PARTNER SITES: Baby Costume Shop | Child Costume Store | Costume Deals Direct | Costume Party Deals | Girls Costume Store | Kids Costume Deals | Superhero Costume Store | Tom Arma Baby Costumes | Tom Arma Halloween
[MY Yt!]  [RSS]



a **ShopHopper** specialty shopping comparison engine

# Rhino Costumes

SEARCH: [............................    ................    ...............] [GO]

## Rhino Costumes

Home > "Rhino Costumes"

Filters

There are no additional ways
to narrow down these results.

**Costume Express**
Kids' Costumes and Accessories For Halloween, Parties or Dress-
up!
CostumeExpress.com

**Costumes**
Huge selection of Costumes items.
shopping.yahoo.com

**Costume**
Save on Costume "Compare Prices, Brands & More"
www.smarter.com

**Butterfly Costumes**
Take to the Sky as a Butterfly. Save on Butterfly Costumes!
Shopzilla.com/ButterflyCostumes

Ads by Google

**Showing 1 - 4 of 4**

**Tom Arma Rhino
Signature Collection**

Due to the collectable
nature of the Tom Arma
Signature Collection, Tom
Arma Costumes, Inc. has
authorized and requested
that we put a non-return
policy in place. We thank
you for your
understanding. This
heirloom quality costume
is fully lined and includes:
plush grey body suit with
snaps in (upper) back
only, lined booties* (not
intended for wear over
shoes), and matching
character headpiece with
grey lined ears, fabric
horn, and front Velcro
closure. Costume
available in Infant and
Toddler sizes. There will
be only a limited number
of Tom Arma Rhino
costumes made worldwide
for the Signature



Collection. Once a size is sold out, it is sold out for this season. Small: Infant 6-12 Months (approx. weight of child is 12-18 lbs., height of child up to 29 inches, waist to 18 inches). Medium: Toddler 12-18 Months (approx. weight of child is 18-22 lbs., height of child up to 31 inches, waist to 19 inches). Large: Toddler 18 Months-2T (approx. weight of child is 22-26 lbs., height of child up to 33 inches, waist to 20 inches). *Booties: We recommend booties for use indoors, while taking photos, or traveling by stroller. If child will be walking outside, we suggest wearing shoes instead of booties. Costume details may vary from photograph. "Critter Facts" listed on packaging provided by the National Wildlife Federation. For home use only, not for commercial purpose. This product is sold exclusively at BuyCostumes.com. Please note that costumes with bodysuits fit more snugly than the plush costumes do.

**$49.99**

**BUY NOW**

at BuyCostumes.com

---



**Baby Tom Arma Rhino Signature Collection Costume**

Sold Exclusively at BuyCostumes.com

**$49.99**

**BUY NOW**

at BuyCostumes.com
1216 store reviews

---



See larger Image

**Tom Arma Rhino Signature Collection Costume**

**Due to the collectable nature of the Tom Arma Signature Collection, Tom Arma Costumes, Inc. has authorized and requested that we put a non-return policy in place. We thank you for your understanding.**

**$50 - $50**

**COMPARE OFFERS**

from 2 stores



White Tiger Halloween Costumes

 ShopHopper specialty shopping comparison engine

# WHITE TIGER HALLOWEEN COSTUMES

SEARCH: ............... .......... ..... .. | GO |

## White Tiger Halloween Costumes

Home > "White Tiger Halloween Costumes"

**Filters**

There are no additional ways
to narrow down these results.

**Remarkable Kids Costumes**
Beautiful, dreamy costumes Experience great shopping with us.
GlitzyKidz.com

**Costume Express**
Kids' Costumes and Accessories For Halloween, Parties or Dress-up!
CostumeExpress.com

**Infant Halloween Costumes**
Halloween costumes on sale! All kinds of costumes, come see.
A2ZSellsBabyCostumes.com

**Costumes for All**
Costumes for All Occassions Huge Selection. Quick Ship.
www.HalloweenExpress.com

Ads by Google

**Showing 1 - 2 of 2**

### Tom Arma White Tiger Signature Collection

Due to the collectable
nature of the Tom Arma
Signature Collection, Tom
Arma Costumes, Inc. has
authorized and requested
that we put a non-return
policy in place. We thank
you for your
understanding. This
heirloom quality costume
is fully lined with soft
fleece. Includes: White
body suit with screen
printed Black tiger stripes
with snaps in (upper) back
only, lined booties* (not
intended to be worn over
shoes), attached wired tail
and matching character
headpiece with front
Velcro closure. Available
in Infant and Toddler
sizes. There will be only a
limited number of Tom
Arma White Tiger
costumes made worldwide



for the Signature Collection. Once a size is sold out, it is sold out for this season. Small: Infant 6-12 Months (approx. weight of child 12-18 lbs., height of child up to 29 inches, waist to 18 inches). Medium: Toddler 12-18 Months (approx. weight of child is 18-22 lbs., height of child up to 31 inches, waist to 19 inches). Large: Toddler 18-24 Months (approx. weight of child is 22-26 lbs., height of child up to 33 inches, waist to 29 inches, chest to 30"). *Booties: We recommend booties for use indoors, while taking photos, or traveling by stroller. If child will be walking outside, we suggest wearing shoes instead of booties. Hand wash cold, line dry, do not bleach. Please Note: some labels may state "Dry Clean Only", costume may be Dry Cleaned, but we still recommend hand washing for best results. 100% Polyester - No animals were harmed/no animal products used to create these wonderful costumes. Costume details may vary from photograph. "Critter Facts" listed on packaging provided by the National Wildlife Federation. 100% of the electricity used to make this Tom Arma costume is offset with 100% Green-e Certified Renewable Energy. For home use only, not for commercial purpose. This product is sold exclusively at BuyCostumes.com. Please note that the white tiger and the lion costumes fit more snugly than the plush bunny, snow monkey and beaver.

**$49.99**

**BUY NOW**

at BuyCostumes.com

**Tom Arma White Tiger Signature Collection (Extended Sizes)**

Due to the collectable nature of the Tom Arma



Signature Collection, Tom Arma Costumes, Inc. has authorized and requested that we put a non-return policy in place. We thank you for your understanding. This heirloom quality costume is fully lined with soft fleece. Includes: plush Black and White body suit with snaps in (upper) back only, lined booties* (not intended for wear over shoes), attached tail and matching character headpiece with Pink lined ears and front Velcro closure. Costume available in New Extended Toddler sizes. There will be only a limited number of Tom Arma White Tiger costumes made worldwide for the Signature Collection. Once a size is sold out, it is sold out for this season. Toddler 3T-4T (approx. weight of child is 28-34 lbs., height of child up to 39 inches, waist to 33 inches). Toddler 4T-5T (approx. weight of child is 35-40 lbs., height of child up to 42 inches, waist to 34 inches). *Booties: We recommend booties for use indoors, while taking photos, or traveling by stroller. If child will be walking outside, we suggest wearing shoes instead of booties. Costume details may vary from photograph. "Critter Facts" listed on packaging provided by the National Wildlife Federation. For home use only, not for commercial purpose. This product is sold exclusively at BuyCostumes.com. Please note that costumes with bodysuits fit more snugly than the plush costumes do.

**$59.99**

BUY NOW

at BuyCostumes.com

### 30" Hanging Grim Reaper in White Shroud with Chest

This 30" Hanging Grim Reaper in White Shroud with Chest has a foam head, chest and hands

**$29.99**

BUY NOW

at BuyCostumes.com

EXHIBIT A

om arma - Google Search

Page 1 of 2

**Web** Images  Maps News  Shopping  Gmail  more ▼

Sign in

# Google

tom arma

[ Search ]  Advanced Search
Preferences

---

**Web**  Images     Results **1 - 10** of about **146,000 English** pages for **tom arma**. (0.20 seconds)

### Tom Arma
www.eBay.com    Bid on **Tom Arma** now! Find Gifts & Occasions.

Sponsored Link

Sponsored Links

**Tom Arma**
Find, compare & buy
Compare & Buy from 1000's of Stores
www.Shopping.com/Toys_and_Games

**Tom Arma**
Cute Costumes For Kids!
Choose **Tom Arma**.
Shopzilla.com/TomArmaCostumes

Image results for **tom arma**

  

### Tom Arma Official Website
For more information please e-mail Julie **Arma**. **Tom Arma** is "the most published baby
photographer in the world" (NY Times). This is his official website.
www.tomarma.com/ - 4k - Cached - Similar pages

Official Website        Biography
GalleryMenu           Licensing Catalogue
Photo Contest August 2006 ...   Tubac Weather

More results from tomarma.com »

### Tom Arma Costumes – BuyCostumes Says Goodbye to Tom Arma Costumes
BuyCostumes.com says Good Bye to **Tom Arma** Costumes BuyCostumes.com has had the
pleasure of being the exclusive retailer of **Tom Arma** Costumes for the past ...
www.buycostumes.com/Category/129/68/results1.aspx - 23k - Cached - Similar pages

### Tom Arma Costumes
Save on **Tom Arma** Halloween Costumes today with the latest coupon code. Choose from
the **Tom Arma** Monkey & Toy Signature Collection, Skunk, Frog, ...
www.halloween-costume-shopping.com/baby/tom-arma/ - 29k - Cached - Similar pages

### Tom Arma Costumed Babies Photo Galleries - Funny Pictures
Numerous collections of cute babies in adorable costumes are shown from photographer
Tom Arma.
humor.about.com/od/pictures/a/tom_arma_babies.htm - 18k - Cached - Similar pages

### Tom Arma Costumes - Baby costumes from the most published baby ...
Tom Arma Costumes - We are the exclusive retailer for **Tom Arma** Costumes. Buy from
the costume authority at HalloweenExpress.com.
www.halloweenexpress.com/tom-arma-costumes-c-2_353.html - 56k -
Cached - Similar pages

### Thingamababy: Baby Costumes by Tom Arma
Tom Arma has been photographing babies for almost 35 years. Some of that fame is due
to the elaborate costumes his babies wear. So it was a no brainer that ...
www.thingamababy.com/baby/2006/10/baby_costumes_b.html - 23k -
Cached - Similar pages

### Tom Arma Posters at AllPosters.com
Tom Arma Posters at AllPosters.com. Choose from over 300000 posters and prints.

http://www.google.com/search?hl=en&q=tom+arma

Edward Greenberg, Esq. (ECG 5553)
EDWARD C. GREENBERG, P.C.
570 Lexington Ave.
New York, NY 10022
(212) 697-8777

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x          Index No:  07CV10967
TOM ARMA, TOM ARMA STUDIO, INC. &
TOM ARMA COSTUMES INC.


                        Plaintiffs,          Hon. Robert W. Sweet

      - against -

BUYSEASONS INC., BUYCOSTUMES &
JALEM GETZ

                        Defendants.

----------------------------------------------------------------x

### DECLARATION OF EDWARD GREENBERG

     EDWARD GREENBERG declares pursuant to 28 U.S.C. § 1746:

     1.  I am the attorney representing the plaintiffs.  Pursuant to Rule 11 we attempted to obviate motion practice by requesting without judicial intervention, that *inter alia,* defendants cease their infringing activities.

     2.  Pursuant to our Rule 11 obligations there was a stream of correspondence and telephone conversations by and between the undersigned and Frank DiCastri Esq, attorney for defendants prior to the filing of suit.

3. Defendants did in fact cease *some* but *not all* of their infringing activities and did so under the auspices of their current counsel, Frank DiCastri.

4. Mr. DiCastri and your declarant had numerous telephone conversations during the month of November 2007. During said discussions the possibility that Jalem Getz might be personally liable with respect to certain complained of activities was raised by me and discussed.

5. Mr. DiCastri made it abundantly clear to your declarant that Mr. Getz was "possessed of more than substantial assets to litigate this matter." Counsel gave your declarant the crystal clear impression that with respect to Mr. Getz personally, "money was no object."

6. A cursory examination of public documents (annexed hereto as Exhibit A) *appears* to indicate that Mr. Getz as of 2006 owned 466,142 shares of Liberty Media Corporation, the company which we were informed acquired BuyCostumes. It further confirmed Mr. DiCastri's representations as to Mr. Getz public representations of propriety. An cursory examination of the same documents indicates that Mr. Getz is possessed of substantial assets. Notwithstanding his relative youth, Mr. Getz boasts of "400 Seasonal workers". Mr. Arma it ought be noted, has but one employee, his wife.

Dated this 5th day of February, 2008                    EDWARD C. GREENBERG P.C.


/s/ Edward C. Greenberg_____
By: Edward C. Greenberg, Esq (5553)

Edward Greenberg, Esq. (ECG 5553)
EDWARD C. GREENBERG, P.C.
570 Lexington Ave.
New York, NY 10022
(212) 697-8777

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

TOM ARMA, TOM ARMA STUDIO, INC. &
TOM ARMA COSTUMES INC.

                                    Plaintiffs,

        - against -

BUYSEASONS INC., BUYCOSTUMES &
JALEM GETZ

                                    Defendants.

-----------------------------------------------------------x

Index No: 07CV10967

Hon. Robert W. Sweet

## DECLARATION OF JULIE ARMA

JULIE ARMA, declares pursuant to 28 U.S.C. § 1746:

1. I am an individual residing in the state of Arizona and an employee of the plaintiffs Tom Arma Studio, Inc. and Tom Arma Costumes, Inc.. Plaintiff Tom Arma and I have been married since July, 28 1998.

2. I am employed as the Global Caretaker / Business Manager of plaintiffs Tom Arma Studio Inc, and Tom Arma Costumes Inc, a position I have held since 1997. I am the primary contact for all companies wishing to do business with Mr. Arma or any entity affiliated with him.

3. I am intimately familiar with the plaintiffs' business relationships as well as their intellectual property as I am responsible for maintaining and securing licensing for same and policing its use in the marketplace.

4. Defendants and plaintiffs together negotiated the May 24, 2004 "Exclusive On-Line Distribution Agreement" (hereinafter the "agreement"). The agreement was renewed several times and was active from May 24, 2004 through November 15, 2007.

5. I first spoke with Defendant Jalem Getz in April 2004 about the possibility of doing business with the plaintiffs. Mr. Getz was enthusiastic about this prospect and eager to sign us to a contract with his company BuySeasons Inc.

6. Mr Getz negotiated the May 24, 2004 agreement with me on behalf of his company BuySeasons Inc and was fully aware of, and consented to, the venue provision contained therein. At no point during the negotiations did he object to the fixing of jurisdiction and venue for any disputes arising under the agreement to the Southern District of New York.

7. Jalem Getz was virtually the only person at BuySeasons with whom I had any contact whatsoever. *Every decision of consequence relating to the use of Tom Arma Costumes and the intellectual property relating to same by BuySeasons, BuyCostumes and their corresponding websites had to go through Jalem Getz.*

8. Mr. Getz informed me that he had to personally approve every promotion advertisement and discount involving Tom Arma costumes by defendants before they could go into effect. Such advertisements and promotions included but were not limited to a photo contest (searching for children that typified what it meant to be a "Tom Arma Baby") run through BuyCostumes' website.

9.  Ironically it was Jalem Getz who frequently called me at home to inform me of infringements of the Tom Arma name, marks, or intellectual property by third parties.  Mr Getz, during the course of our agreement, acted to "police" our intellectual property on the internet and elsewhere.

10.  Defendant, Getz, also personally corresponded with me on distribution ideas for the Tom Arma brand costumes.  He was always informing me of opportunities to get the brand more exposure and was actively involved in the pursuit of new marketing ideas for the brand through his companies.

11.  Mr. Getz was so involved with his company's use of the plaintiffs' marks and other intellectual property that he *personally* approved layouts of our products in defendants' catalogues and so represented.

12.  When our relationship with BuySeasons came to a close Mr. Getz made the arrangements with us for the pickup of our excess inventory, a task that would normally not fall within the purview of the president of a company.

13.  In my capacity as an employee of plaintiffs Tom Arma Costumes, Inc. and Tom Arma Studio Inc., Mr. Getz was the face, voice and brains of the defendants.  He was my primary contact at the company and was involved at all levels of its operation.  I have listed several specific examples of Mr. Getz' involvement herein but there are many, many others.

14.  Mr Getz is not only the President of BuySeasons he is its principle salesman, negotiator and public relations liaison.

15.  Getz made all decisions of consequence with regard to the Tom Arma brand and marks during our relationship with the defendants.  If at any point Getz directed that the

infringing activity cease it would have simply been done. It is Getz's refusal to do so that has necessitated the within action.

16.  I have personally been involved with more than eighty agreements on behalf of the plaintiffs.  We have licensed our intellectual property for items including but not limited to costumes, books, photographs and postcards **worldwide**.  Mr. Arma resided and did business exclusively out of New York until October 2004.  Until such date the jurisdiction and venue clause in all of our contracts was listed as New York.  We insisted upon it.

17.  Subsequent to the birth of our child and our move to Arizona in October 2004 I have been personally involved in no fewer than thirty contract negotiations.  Even now, each contract I have been involved in sets jurisdiction and venue as New York.  Our licensing agent Cop Corp Licensing is still located in New York.  We continue to do business in New York.  Our licensees do business in New York.  New York is a neutral sight and our licensees would never agree to jurisdiction in Arizona.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated this 5 day of February, 2008              JULIE ARMA

                                                 JAArma