Peter N. Wang (#9216)
Yonaton Aronoff (#3492)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York  10016
(212) 682-7474
(212) 687-2329 fax

Frank W. DiCastri
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin  53202
(414) 271-2400
(414) 297-4900 fax

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| TOM ARMA, TOM ARMA STUDIO, INC. & TOM ARMA COSTUMES, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Case No. 07-CV-10967 (RWS) |
| BUYSEASONS, INC., BUYCOSTUMES & JALEM GETZ, | ) ) ) ) |
| Defendants. | ) ) |

_____

**DEFENDANTS' REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

DISCUSSION ....................................................................................................................... 1

I. PLAINTIFFS CANNOT MAKE THE FORUM SELECTION CLAUSE APPLY BY IGNORING THE ALLEGATIONS OF THEIR OWN COMPLAINT ...................... 1

    A. Plaintiffs Cannot Bind Defendant Getz To The Forum Selection Clause .............. 4

II. PLAINTIFFS HAVE NOT SHOWN THAT PERSONAL JURISDICTION OVER GETZ IS PROPER ........................................................................................... 5

III. DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE GRANTED .......... 6

IV. DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS MUST BE GRANTED ..................................................................................................................... 8

    A. Plaintiffs Concede That Their Breach Of Contract Claims Must Be Dismissed ............................................................................................................... 8

    B. Plaintiffs' Copyright Infringement Claims Do Not Set Out The Particular Infringing Acts With The Required Level Of Specificity ..................................... 8

    C. Plaintiffs' Arguments Regarding Getz's Personal Liability Are Irrelevant .......... 10

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*AGR Financial, L.L.C. v. Ready Staffing, Inc.*,
  99 F. Supp. 2d 399 (S.D.N.Y. 2000)..................................................................................3

*Bense v. Interstate Battery System of America, Inc.*,
  683 F.2d 718 (2d Cir. 1982)...............................................................................................3

*Cheever v. Academy Chicago Ltd.*,
  685 F. Supp. 914 (S.D.N.Y. 1988) ....................................................................................2

*Corcovado Music Corp. v. Hollis Music, Inc.*,
  981 F.2d 679 (2d Cir. 1993) ..............................................................................................2

*Dan-Dee Intn'l, Ltd. v. Kmart Corp.*,
  2000 WL 1346865 (S.D.N.Y.) ....................................................................................... 1-2

*Gessler v. Sobieski Destylarnia S.A.*,
  2007 WL 1295671 (S.D.N.Y.).........................................................................................3

*Hellex Car Rental Systems, Inc. v. Dollar Systems, Inc.*,
  2005 WL 3021963 (E.D.N.Y.).........................................................................................2

*In re Andrew Velez Construction, Inc.*,
  373 B.R. 262 (Bankr. S.D.N.Y. 2007) ..........................................................................5, 9

*Lipton v. Orange County, New York*,
  315 F. Supp. 2d 434 (S.D.N.Y. 2004) ........................................................................... 6-8

*Marvullo v. Gruner & Jahr AG & Co.*,
  105 F. Supp. 2d 225 (S.D.N.Y. 2000) ..............................................................................9

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993)............................................................................................3

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)............................................................................................................2

*TSR Silicon Resources, Inc. v. Broadway Com Corp.*,
  2007 WL 4457770 (S.D.N.Y.).........................................................................................1

*Victor G. Reiling & Assoc. v. Fisher-Price, Inc.*,
  2003 WL 21785580 (D. Conn.) .......................................................................................3

*Weingrad v. Telepathy, Inc.*,
  2005 WL 2990645 (S.D.N.Y.).........................................................................................3

*Weiss v. Columbia Pictures Television, Inc.*,
    801 F. Supp. 1276 (S.D.N.Y. 1992) ................................................................................1

**STATUTES**

28 U.S.C. § 1404(a) ........................................................................................................2

**OTHER AUTHORITIES**

RULE 12(b)(6) ..........................................................................................................8, 10

iii

## DISCUSSION

### I. PLAINTIFFS CANNOT MAKE THE FORUM SELECTION CLAUSE APPLY BY IGNORING THE ALLEGATIONS OF THEIR OWN COMPLAINT

Plaintiffs devote seven pages of their brief to a discussion of the Forum Selection Clause, but they never address the real issue. The allegations in Plaintiffs' Amended Complaint all relate to post-contract events. Nowhere do Plaintiffs allege claims for wrongdoing under the Distribution Agreement. Instead, they allege that their rights under the Copyright Act and the Lanham Act have been violated, and in so doing, Plaintiffs repeatedly reject the existence of any continuing rights under the Distribution Agreement.

Plaintiffs ignore these arguments by failing to acknowledge the limitations of their own lawsuit. They attempt to reframe the issue as if this were an ordinary lawsuit for breach of contractual obligations. This is not such a case – a fact made more evident by Plaintiffs' failure to respond to Defendants' motion to dismiss the breach of contract claims.[1]

Not surprisingly, Plaintiffs cite cases showing a general policy that favors enforcement of forum selection clauses when the dispute arises under the contract. But this policy is rationally applied only when the dispute actually arises under the contract, and none of the cases Plaintiffs cite in this regard is on point. *See, e.g., Dan-Dee Intn'l, Ltd. v. Kmart Corp.*, 2000 WL 1346865 at *5 (S.D.N.Y.) ("This general rule [of enforcing forum selection clauses] applies, however, only when the contract containing the forum selection clause is the subject of the suit.").[2] Compounding their error, Plaintiffs spend several misguided pages of their brief

---

[1] Because Plaintiffs failed to respond to Defendants' motion to dismiss the breach of contract claims, the motion must be granted, or at a minimum, the claims must be disregarded for present purposes. *See infra*., Section IV.A.

[2] Plaintiffs' cases are inapposite. In *TSR Silicon Resources, Inc. v. Broadway Com Corp.*, 2007 WL 4457770 at *5 (S.D.N.Y.), the lawsuit was predicated upon the invoice containing the forum selection clause. *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1277 (S.D.N.Y. 1992) involved an age

1

discussing exceptions to the application of forum selection clauses based on fraud and the like – arguments the Defendants did not even make. *See* Plaintiffs' Brief at 3-6. Because Defendants did not make these arguments, they will not address Plaintiffs' attempts to reject them.

Continuing this pattern, Plaintiffs cite case law saying that forum selection clauses can apply even after a contract expires. This ought to be obvious, where a dispute arises under the contract. What should be equally obvious is that Defendants do not argue that the Forum Selection Clause is inapplicable merely because the Distribution Agreement has expired. Indeed, the Forum Selection Clause is inapplicable because Plaintiffs assert no rights under the Distribution Agreement, and, in fact, reject any such rights. Under these circumstances, courts have routinely refused to apply forum selection clauses. *See, e.g., Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993) ("Where a plaintiff sues for copyright infringement *and asserts no rights under a contract with the defendant containing a forum-selection clause*, the forum-selection clause has no effect.") (emphasis added); *Cheever v. Academy Chicago Ltd.*, 685 F. Supp. 914, 917 (S.D.N.Y. 1988) (declining to apply forum selection clause in part because plaintiffs attempted to "reject [the contract] as a source of any license"); *Dan-Dee*, 2000 WL 1346865 at *5 (holding that the action was not governed by a contractual forum selection clause because "Dan-dee seeks monetary and injunctive relief in an action arising out of Kmart's sale of allegedly infringing gorillas; it does not seek contractual

---

discrimination claim arising directly from the plaintiff's employment agreement, which contained a forum selection clause for any disputes arising out of the agreement or "the termination of such employment." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-32 (1988) involved a more limited issue, whether 28 U.S.C. § 1404(a), as opposed to state law, controls a decision as to whether to give effect to a forum selection clause. Finally, in *Hellex Car Rental Systems, Inc. v. Dollar Systems, Inc.*, 2005 WL 3021963 at *4 (E.D.N.Y.), the plaintiff sued for breach of a franchise agreement, which was an action "with respect to" an assignment consent (containing a forum selection clause) by which plaintiff succeeded to the rights and obligations under the franchise agreement.

2

relief."); *Victor G. Reiling & Assoc. v. Fisher-Price, Inc.*, 2003 WL 21785580 at *2 (D. Conn.) (same holding, where contract had expired and "plaintiffs are not asserting any rights under it").

None of Plaintiffs' cases on this point is persuasive. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993), clearly involved misconduct that allegedly occurred during the performance of the relevant contracts. And, as much as Plaintiffs would prefer otherwise, the Distribution Agreement does not contemplate that the parties would submit to New York courts for all disputes "related to" the Distribution Agreement. *See* Plaintiffs' Brief at 8. In fact, the contracts in *Roby* included this language only in an arbitration agreement – not a forum selection clause. *See Roby*, 996 F.2d at 1361.

Similarly, in *Gessler v. Sobieski Destylarnia S.A.*, 2007 WL 1295671 at *1, *4 (S.D.N.Y.), the complaint alleged violations of the contracts at issue, which required the defendant's predecessor-in-interest to "return, and cease and desist using [a trade secret recipe], upon termination of those agreements." Here Plaintiffs do not allege any continuing rights or obligations under the Distribution Agreement, but rather that the Distribution Agreement is of "no further effect." Amended Complaint at 2.[3]

Plaintiffs' statement that "defendants have violated the agreement" by continuing to use Plaintiffs' marks after the Distribution Agreement expired is simply wrong. *See* Plaintiffs' Brief at 8. This statement is contradicted by the Amended Complaint itself, which consistently rejects the Distribution Agreement as a source of any continuing rights or obligations. In reality,

---

[3] Other cases cited by Plaintiffs are equally unavailing. In *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 720 (2d Cir. 1982), the Court of Appeals found that plaintiff's claim was one for wrongful termination of the contract at issue, so it was clear that the claim arose "directly or indirectly" from the contract. In *AGR Financial, L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000), the court found that there was no evidence that the contract had terminated and the plaintiff was "suing based, in part, on" the contract. And in *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645 at *2-*3 (S.D.N.Y.), the plaintiff's claims clearly involved rights arising out of the contract at issue.

3

Plaintiffs allege something completely different: *that Defendants have violated the Copyright Act and the Lanham Act, not the Distribution Agreement*.

      A.      <u>Plaintiffs Cannot Bind Defendant Getz To The Forum Selection Clause</u>

Even if the Court finds that the Forum Selection Clause applies to Buyseasons, Defendant Getz cannot be bound by the Forum Selection Clause. Getz is the President of Buyseasons, but it cannot be said that he was so "closely related to the dispute" that it was "foreseeable" that he would be hauled into court in New York. This dispute arose entirely after the Distribution Agreement had expired, and Plaintiffs cannot prove Getz's relation to the dispute by giving their perception of Getz's level of involvement in the company during the term of the contract. Plaintiffs' own cases show that Plaintiffs must demonstrate that Getz is closely related to "the dispute," not just that he, as Buyseasons' President, may have played a significant role in the company while the Distribution Agreement was in place.

Notably, Plaintiffs' only allegation that Getz was involved with Plaintiffs following expiration of the Distribution Agreement is that he was "responsible for the return of remaining inventory to the plaintiffs at the end of the contract term." Plaintiffs' Brief at 9-10. This is not an accurate statement. *See* Supplemental Affidavit of Jalem Getz at ¶ 9, attached hereto as <u>Exhibit A</u> (hereinafter, "Supp. App at ___"). All other allegations about Getz's involvement fail to show that he was closely related to "the dispute" because, as shown in Defendants' opening brief, there are only vague, unsupported allegations as to Getz's conduct since expiration of the Distribution Agreement.[4]

---

[4] In any event, Getz's Supplemental Affidavit demonstrates that Getz was not as "intimately involved" in the relationship as Plaintiffs would have the Court believe. *See* Exhibit A.

4

## II.  PLAINTIFFS HAVE NOT SHOWN THAT PERSONAL JURISDICTION OVER GETZ IS PROPER

Contrary to Plaintiffs' assertions, Defendants have properly stated Plaintiffs' burden as to personal jurisdiction.  *See* Defendants' Brief at 2 (citing *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998) (holding that a plaintiff's complaint must contain good faith, legally sufficient allegations of jurisdiction)).  Plaintiffs have not met their burden.

At pages 11-14 of their brief, Plaintiffs again misinterpret Defendants' argument.  As noted in their opening brief, Defendants concede, for present purposes (and while reserving all rights to argue the contrary), that the Court has personal jurisdiction over Buyseasons under New York's long-arm statute.  *See* Defendants' opening brief at 10, n.5.  So Plaintiffs' discussion of "interactive web sites" is irrelevant, and should not be considered by this Court.[5]

With respect to Defendants' argument that the Court lacks personal jurisdiction over Getz under N.Y. C.P.L.R. § 302(a)(1), Plaintiffs fail to address Defendants' arguments.  Instead, Plaintiffs merely pick up where they left off in the Amended Complaint, by repeating the same vague and legally insufficient allegations of "control" and "personal[] benefits" allegedly enjoyed by Getz.  These allegations were fully addressed in Defendants' opening brief, and will not be repeated here.

What must be addressed, however, is Plaintiffs' new allegation (raised for the first time in their response brief) that jurisdiction over Getz is proper under an *alter ego* theory.  This argument should not be considered because Plaintiffs have not alleged any *alter ego* theories in their Amended Complaint.  *See, e.g., In re Andrew Velez Construction, Inc.*, 373 B.R. 262, 276-77 (Bankr. S.D.N.Y. 2007) (holding that allegations made for the first time in brief in opposition

---

[5] It is important to note, however, that Plaintiffs again improperly group all of the Defendants together as if they are one.  Contrary to Plaintiffs' suggestions, www.buycostumes.com is not Defendant Getz's web site.  *See* Plaintiffs' Brief at 12, 14.

to motion to dismiss should not be considered because it is an allegation outside the four corners of the complaint) (citing *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996)).

Note also that Plaintiffs fail to respond to any of Defendants' arguments with respect to §§ 302(a)(2), (a)(3) and (a)(4) of New York's long-arm statute. As a result, Plaintiffs have waived any argument that personal jurisdiction is proper under those sections. *See, e.g., Lipton v. Orange County, New York*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citing *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (additional citations omitted)). Plaintiffs have similarly waived any argument that jurisdiction over Getz comports with due process. Although Plaintiffs briefly address due process issues at pages 15-16 of their brief, they address due process only as it would relate to the corporate defendant, Buyseasons. None of the cases Plaintiffs cite addresses or resolves the due process concerns that arise when an employee of an internet company is required to appear in a foreign jurisdiction simply because that company places web pages and products into the stream of commerce.

### III.  DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE GRANTED

Plaintiffs explain that parties they contract with for the licensing of intellectual property are "reluctant to agree to jurisdiction in the State of Arizona." They also explain that New York is chosen as a forum in their contracts because it is a *neutral* jurisdiction, and that Plaintiffs "cannot afford" to be dragged into court outside of New York. These explanations miss the point.

Whatever Plaintiffs' justification may have been for using a New York forum selection clause (in this, or any other case), the only relevant question is whether a transfer of

6

venue is warranted under the circumstances of *this* case, and it clearly is. When they finally get around to discussing the standards for a transfer of venue, Plaintiffs fail to address most of them, including the convenience of witnesses and parties, the location of documents and access to sources of proof, and the locus of operative facts. Because Plaintiffs have failed to respond to these arguments, they have waived any defense to them, and the Court should find that such factors weigh in Defendants' favor. *See, e.g., Lipton*, 315 F. Supp. 2d at 446.

Plaintiffs' arguments with respect to the convenience and relative means of the parties are unavailing. Plaintiffs do not argue that they are unable to litigate this case in Wisconsin; they merely argue that Defendants are capable of litigating in New York. At best, this factor does not favor New York over Wisconsin.[6] *The only person present in New York is Mr. Greenberg, counsel for the Plaintiffs.* To defeat a motion to transfer venue, it cannot be enough to simply argue that New York is convenient for Plaintiffs because they will not need to call any of Defendants' witnesses at trial. Nor is it persuasive to suggest that the governing law is New York's. As Defendants argued in their opening brief at page 21, n.12, what Plaintiffs refer to as the "bulk of the claims" (Plaintiffs' Brief at 18) are based on federal statutes. New York should not be deemed to have any significant advantage over Wisconsin in this regard.

Finally, even if the Court applies the Forum Selection Clause to this case, a transfer of venue is still warranted. The facts and circumstances today are far different than they were in 2004, when the parties signed the Distribution Agreement. The Distribution Agreement has expired. Plaintiffs are no longer located in New York, and have had virtually no connection

---

[6] It is distasteful to have to respond to Mr. Greenberg's declaration about conversations between lawyers having nothing to do with the merits of this case, so Defendants pause only briefly on this subject. Although he uses quotation marks, Mr. Greenberg does not purport to quote directly from counsel for the Defendants, but rather states his "crystal clear impression" of what he understood counsel to be saying. Defendants will not clutter the record with a response detailing the inaccuracies of Mr. Greenberg's "impressions" on an unimportant issue. If what Mr. Greenberg is trying to suggest is that Mr. Getz is not a pauper, Defendants never suggested he was.

7

to that state since *October 2004*. *See* Arma Declaration at ¶¶ 16-17. New York has no connection to this litigation, aside from being the location of Plaintiffs' lawyer. It would be far more convenient for all parties to have the litigation venued in Wisconsin, where the Defendants reside, the documents are located, and where the operative events allegedly occurred.

Plaintiffs' only attempt to establish connections with New York fails. In her Declaration, Ms. Arma claims that "our licensing agent Cop Corp Licensing is still located in New York," and that Plaintiffs "continue[] to do business in New York" along with their unnamed licensees. *See* Arma Declaration at ¶ 17. Plaintiffs' licensing agent was never involved in any negotiations or contractual relationship between Plaintiffs and Defendants. The Distribution Agreement and the amendments thereto were made directly between the parties. *See* Supp. App. at ¶ 14. Moreover, the fact that Plaintiffs or their licensees may do some other business in New York is irrelevant for purposes of determining the appropriate venue for this action.

**IV.   DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS MUST BE GRANTED**

    A.   <u>Plaintiffs Concede That Their Breach Of Contract Claims Must Be Dismissed</u>

Plaintiffs do not respond to Defendants motion to dismiss the breach of contract claims, so Defendants' motion must be granted. *See, e.g., Lipton*, 315 F. Supp. 2d at 446. By failing to address the issue in their response brief, Plaintiffs have waived any defense. *See id.*[7]

    B.   <u>Plaintiffs' Copyright Infringement Claims Do Not Set Out The Particular Infringing Acts With The Required Level Of Specificity</u>

Plaintiffs misunderstand Defendants' motion to dismiss the copyright infringement claims. Defendants argue only that Plaintiffs have failed to set out the particular

---

[7] Additionally, Defendants have demonstrated that "Buycostumes" is not a separate legal entity, but merely the brand name for Buyseasons' web site, www.buycostumes.com. Plaintiffs do not dispute this, so "Buycostumes" should be dismissed from this case and the caption changed accordingly.

8

infringing acts with the required level of specificity. *See Marvullo v. Gruner & Jahr AG & Co.*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) (holding that the complaint must set out the particular infringing acts with some specificity). Although Plaintiffs identify the images that are registered, they do not allege which particular images were used or where they appeared. They also allege that Defendants have removed "certain" of the images, so it is impossible to determine what the alleged infringements are.

Plaintiffs' attempt to correct this problem by attaching to Mr. Greenberg's declaration printouts of web pages from November 30, 2007, does little to improve the defect in pleading. These web pages were not attached to the Amended Complaint, so they should not be considered for purposes of this motion. *See Andrew Velez*, 373 B.R. at 276-77. More importantly, nowhere in the Amended Complaint do Plaintiffs allege that any of these web pages were active when the complaint was filed. None of them are active now. *See* Supp. Aff. at ¶ 12.

The attachments found at Exhibit C to Mr. Greenberg's declaration demonstrate a different problem (although they should not be considered either). Plaintiffs attach printouts from the following web pages in a misguided attempt to show that Defendants are continuing to infringe on Plaintiffs' copyrights and trademarks: (1) www.fabuloussavings.com; (2) www.tomarmakidscostumes.com; (3) www.rhinocostumes.com; and (4) www.whitetigerhalloweencostumes.com. None of these web sites is owned or controlled by Buyseasons. *See* Supp. Aff. at ¶ 13. If any of the links to buycostumes.com are clicked on these third party web sites, the customer would be informed that Buyseasons no longer sells Tom Arma costumes. *See id.*.

9

C. <u>Plaintiffs' Arguments Regarding Getz's Personal Liability Are Irrelevant</u>

Defendants have not moved to dismiss the personal liability claims against Getz under Rule 12(b)(6), so Plaintiffs' arguments on this point (pages 21-22 of Plaintiffs' brief) are irrelevant and should be disregarded.

## CONCLUSION

For all of the reasons stated above and in Defendants' opening brief, the Amended Complaint must be dismissed for lack of personal jurisdiction over Defendant Getz and for improper venue. In the alternative, venue should be transferred to the Eastern District of Wisconsin. As a second alternative, counts 1-4 and 8 of the Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

BUYSEASONS, INC. and JALEM GETZ

DATE: February 12, 2008           By:  s/  Yonaton Aronoff

Peter N. Wang (#9216)
Yonaton Aronoff (#3492)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York  10016
(212) 682-7474
(212) 687-2329 fax

Frank W. DiCastri
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin  53202
(414) 271-2400
(414) 297-4900 fax

*Attorneys for Defendants*

10

CERTIFICATE OF SERVICE

    I, Yonaton Aronoff, hereby certify that on this 12th day of February, 2008, I filed the **Defendants' Reply Memorandum of Law In Support of Motion to Dismiss or to Transfer Venue** electronically. Notice of this filing will be sent via the United States District Court electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

    /s/ Yonaton Aronoff
    Yonaton Aronoff

NYC_83937.1

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOM ARMA, TOM ARMA STUDIO, INC. & TOM ARMA COSTUMES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BUYSEASONS, INC., BUYCOSTUMES & JALEM GETZ, <br><br> Defendants. | Case No. 07-CV-10967 (RWS) |

### SUPPLEMENTAL AFFIDAVIT OF JALEM GETZ

I, Jalem Getz, being duly sworn upon oath, state as follows:

1. I have personal knowledge of the matters set forth herein, and if called as a witness in this matter I could and would testify to the same. I submit this supplemental affidavit in support of the Defendants' Reply Brief on their Motions to Dismiss or to Transfer Venue in this case (the "Motion"). Specifically, I make the statements herein to refute Plaintiffs' arguments that personal jurisdiction over me is proper or that venue is proper in New York, either because of my level of involvement in Buyseasons, or for some other reason.

2. As an initial matter, there are many inaccuracies and incomplete statements in Julie Arma's Declaration which Plaintiffs submitted to this Court (the "Arma Declaration"). I have limited my responses herein to those statements which I believe may have any bearing on the merits of Defendants' Motion. I will address any other statements in the Arma Declaration at the proper time and as appropriate.

MILW_3309005.2

3. I was involved in the negotiations with Tom Arma Costumes, Inc. ("Arma Costumes") to sign the Distribution Agreement. The parties never discussed or contemplated that the Forum Selection Clause contained therein would apply to activities occurring after the Distribution Agreement expired.

4. Ms. Arma's statement that I was "virtually the only person at Buyseasons with whom [she] had any contact whatsoever" is not accurate. *See* Arma Declaration at ¶ 7. In fact, Buyseasons has the records to demonstrate that Ms. Arma has communicated hundreds of times by e-mail and otherwise to other employees of Buyseasons, including Dan Haight, our Chief Operating Officer, and others. It is also untrue that "every decision of consequence" with respect to Tom Arma costumes and the related intellectual property had to go through me. *See* Arma Declaration at ¶¶ 7, 15. Buyseasons has many employees and where appropriate I delegated tasks relating to Arma Costumes and the Distribution Agreement.

5. Additionally, Ms. Arma's statement that I had to "personally approve" every promotion and advertisement and discount involving Tom Arma costumes is not accurate. I do not approve every promotion involving Buyseasons, and did not do so with respect to Arma Costumes. At the end of the parties' relationship, I did inform Ms. Arma that she should stop communicating with Buyseasons' other employees because I viewed her communications as unproductive and harassing.

6. While the Distribution Agreement was in effect, I occasionally informed Plaintiffs when I became aware of improper use of the Arma brand on the internet. If I called Ms. Arma "at home," it was because that was the business number she had provided, and it is now my understanding that Arma Costumes operated its business from the Armas' home.

2

7. Ms. Arma is correct to say that, while the Distribution Agreement was in place, I communicated with her on new opportunities to get the Arma brand more exposure. *See* Arma Declaration at ¶ 10. Arma Costumes encouraged this and actively pursued it.

8. Although I was involved with Buyseasons' use of Plaintiffs' trademarks and copyrighted material, it is not accurate to suggest that I personally approved layouts of all Arma products in Buyseasons' catalogues. *See* Arma Declaration at ¶ 11. Again, Buyseasons has many employees and most layouts were approved by other employees of the company.

9. It is not accurate to suggest that I was "responsible" for pickup of Arma's excess inventory. *See* Plaintiffs' Brief at 10. In fact, Dan Haight was primarily responsible for this task and he communicated with Ms. Arma about this issue. To the extent I was involved, it was because Plaintiffs were threatening a lawsuit against Buyseasons at the time.

10. I respectfully submit that Ms. Arma is not in a position to state that I am the "face, voice and brains of the defendants," or that I was "involved at all levels of its operation." *See* Arma Declaration at ¶ 13. Additionally, it is inaccurate to state that I am Buyseasons' "principal salesman, negotiator and public relations liaison." Again, Buyseasons has many employees and each of them handles the duties of his or her own job. These employees include, but are not limited to, at least four people in our direct sales group who handle sales, approximately 150 employees (last year) who served customers, and a public relations firm that occasionally does some work for Buyseasons. Ms. Arma often worked directly with our sales employees. I do not answer customer calls, nor am I involved in many of Buyseasons' most significant business transactions.

11. Since the date of filing of Plaintiffs' complaint and before, Buyseasons has acted to remove allegedly infringing copyrighted and trademarked material from the Web Site and any

other web sites owned by Buyseasons. As of the date of Plaintiffs' complaint or shortly thereafter, I believe Buyseasons has addressed all of Plaintiffs' alleged copyright and trademark infringements by removing the allegedly infringing material from the internet. To the extent that any other Tom Arma copyrighted or trademarked material continues, unknown to Defendants, to appear on the Web Site or other Buyseasons' web sites, Buyseasons will act promptly to remove the same.

12. The printouts of web pages attached as Exhibit B to Mr. Greenberg's Declaration (specifically, those dated in November 2007) are, to the best of my knowledge, all "old" web pages that have since been removed.

13. The printouts of web pages attached as Exhibit C to Mr. Greenberg's Declaration come from the following web sites: (1) www.fabuloussavings.com; (2) www.tomarmakidscostumes.com; (3) www.rhinocostumes.com; and (4) www.whitetigerhalloweencostumes.com. None of these web sites is owned or controlled by Buyseasons. If any of the (old) links to buycostumes.com are clicked on these third party web sites, the customer would be informed that Buyseasons no longer sells Tom Arma costumes.

14. No licensing agent was involved in the parties' negotiations over the Distribution Agreement, or any of the amendments to that agreement. All of these negotiations were made directly between Arma Costumes and Buyseasons.

Dated this 12th day of February, 2008.                JALEM GETZ

Subscribed and sworn to
Before me this 12th day of February, 2008

_____
Notary Public
My commission expires on 9-26-2010

4

MILW_3309005.2