eUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

TOM ARMA, TOMA ARMA STUDIO, INC. &
TOM ARMA COSTUMES, INC.,                        07 Civ. 10967

                    Plaintiffs,                 OPINION

        -against-

BUYSEASONS, INC., BUYCOSTUMES &
JALEM GETZ,

                    Defendants.

------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/8/08
```

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        EDWARD C. GREENBERG PC
        570 Lexington Avenue, 17th Floor
        New York, NY  10022
        By:  Edward C. Greenberg, Esq.


        Attorneys for Defendants

        FOLEY & LARDNER, LLP
        90 Park Avenue
        New York, NY  10016
        By:  Yonaton Aronoff, Esq.
             Frank W. DiCastri

**Sweet, D.J.**

Defendants Buyseasons, Inc. ("Buyseasons") and Jalem Getz ("Getz") (collectively, the "Defendants")[1] have moved pursuant to Rules 12(b)(2), 12(b)(3) and 12(b)(6), Fed. R. Civ. P., to dismiss the Amended Complaint of Plaintiffs Tom Arma ("Arma"), Tom Arma Studios, Inc. ("Arma Studios") and Tom Arma Costumes, Inc. ("Arma Costumes") (collectively, the "Plaintiffs"), or in the alternative, to transfer the action to the Eastern District of Wisconsin. As set forth below, the motion to dismiss is granted in part and denied in part. The motion to transfer is denied.

## I. PRIOR PROCEEDINGS AND FACTS

This action was commenced on December 3, 2007, and an Amended Complaint was filed on January 11, 2008. The instant motion was heard and marked fully submitted on March 26, 2008.

According to the Amended Complaint, Arma, who resides in Arizona, is a leading commercial photographer and costume

---

[1] Defendants have demonstrated that the additional defendant, "Buycostumes," is not a separate legal entity, but merely the brand name for Buyseasons' website, www.buycostumes.com. Plaintiffs do not dispute this, so "Buycostumes" will be dismissed from this case and the caption changed accordingly. See Getz Aff. ¶ 2 n.1.

1

designer.  Am. Compl. ¶ 5.  Arma "does business in the form and
style of the co-Plaintiff corporations," Arma Studios and Arma
Costumes, which are both Arizona corporations with their
principal places of business in Tubac, Arizona.  Id. ¶¶ 5-7.
Arma Studios is engaged in the creation and licensing of
photographic images, while Arma Costumes is engaged in the
"creation, design, manufacture and licensing" of children's
costumes.  Id.

        Buyseasons, a Delaware corporation with its principal
place of business in New Berlin, Wisconsin, is an internet
costume retailer.  Id. ¶ 9.  Buyseasons sells costumes through
its principal website, www.buycostumes.com.  Getz Aff. ¶ 2 n.1.
The Amended Complaint alleges that Getz, a resident of
Wisconsin, is the President, CEO, and principal shareholder of
Buyseasons.  Id. ¶ 10.

        On May 24, 2004, Plaintiffs and Buyseasons entered
into a written "Exclusive On-Line Distribution Agreement"
whereby Buyseasons agreed to distribute Tom Arma brand costumes
on Buyseasons' website (the "Distribution Agreement").  Id. ¶ 2,
Ex. D.  Under the Distribution Agreement, Plaintiffs licensed
their intellectual property, including trademarks and
photographic images, to the Defendants.  After several

                                2

extensions, the Distribution Agreement expired on November 15, 2007.  Id. at ¶¶ 32—33.  Plaintiffs allege that despite the expiration of the Distribution Agreement, Defendants continued to "trad[e] on the name, trademarks and registered photographic images owned by [P]laintiffs" without authority.  Id. at ¶ 3.

Plaintiffs assert that the acts of the Defendants give rise to claims for copyright infringement by Buyseasons, id. ¶¶ 48-54, 55-61; vicarious copyright infringement against Getz, id. ¶¶ 62-75; contributory copyright infringement against Getz, id. ¶¶ 76-90; unfair competition against the Defendants, id. ¶¶ 91-98; false designation and trade disparagement against the Defendants, id. ¶¶ 99-106; dilution against the Defendants, id. ¶¶ 107-111; and breach of contract.  Id. ¶¶ 112-115.

## II.  THE MOTION TO DISMISS UNDER 12(B)(6) IS GRANTED IN PART AND DENIED IN PART

Defendants have moved, pursuant to Rule 12(b)(6), to dismiss Plaintiffs' claims for breach of contract and copyright infringement.

### a.  The 12(b)(6) Standard

3

In considering a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). However, mere "conclusions of law or unwarranted deductions" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotation marks and citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). However, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)

(quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

## b. **The Breach of Contract Claim is Dismissed**

At the outset, the Court notes that Plaintiffs did not respond to Defendants' arguments in support of their motion to dismiss the breach of contract claim, and therefore the Court may deem the claim abandoned. See, e.g., Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524, 530 (S.D.N.Y. 2007) (citing, inter alia, In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643 (GEL), 2007 WL 2694469, at *6 (S.D.N.Y. Sept. 13, 2007)); Lipton v. County of Orange, N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citing Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003)). Nonetheless, the Court considers the breach of contract claim on its merits, and finds that the claim must be dismissed.

In support of their breach of contract claim, Plaintiffs have alleged that Defendants: (i) "[f]ailed to seek and obtain approvals for the use of Plaintiffs' intellectual

5

property as set forth hereinabove;" (ii) "[f]ailed to make timely payments to the Plaintiffs;" and (iii) "[f]ailed to properly account to Plaintiffs as to the specific character, nature and extent of sales of Arma's goods as set out in paragraph 5.1 of the agreement between the parties." Am. Compl. ¶ 113. Plaintiffs also incorporate by reference paragraphs 1– 107 of the Amended Complaint, see id. ¶ 112, none of which allege that Defendants engaged in wrongful conduct during the contract period. Rather, these allegations describe Defendants' wrongful conduct "after the contract period had expired." Id. at ¶ 41. The claim based on an alleged failure "to seek and obtain approvals for the use of Plaintiffs' intellectual property as set forth hereinabove" similarly relates only to Defendants' post-contract activity, not to any breaches committed while the Distribution Agreement was in place.

The bare allegations that Defendants "failed to make timely payments" and "failed to properly account" to Plaintiffs, Am. Compl. ¶ 113, are, without more, conclusory. They are unsupported by any specific facts indicating what particular payments were late, when they were due and made, how such late payments give rise to a claim under the Distribution Agreement, or how such a claim translates into damages.

In the absence of a clear statement of a breach, an implication of breach is inappropriate. It is not "proper to assume that the [Plaintiffs] can prove facts which [they have] not alleged or that the defendants have violated the [] laws in ways that have not been alleged." Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Although federal complaints do not need to include intricate details, "more than labels and conclusions" are required, and, as noted above, the factual allegations "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp., 127 S. Ct. at 1965; see also De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).") (quoting Palda v. Gen. Dynamics Corp., 47 F.3d 872, 875 (7th Cir. 1995)).

Because Plaintiffs allege no facts supporting a claim for breach of contract, that claim is dismissed.

## c.  **The Motion to Dismiss the Copyright Claims is Denied**

To withstand a motion to dismiss for failure to state a claim, a properly plead copyright infringement claim must

7

allege: "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (citations omitted), aff'd, 23 F.3d 398 (2d Cir. 1994). Defendants assert that the Amended Complaint fails to allege the infringing acts with requisite specificity.

The Amended Complaint contains a list of 14 registered images, including registration numbers and dates and appended copyright registration certificates, which "serve as a predicate" for Plaintiffs' copyright infringement claims, and alleges that subsequent to the termination of the parties' agreement on November 15, 2007, Defendants "have displayed on their website, and caused to be displayed on other sites, at least 26 images registered in Plaintiff's name." Am. Compl. ¶¶ 15, 17, 42.

While "Rule 8 of the Federal Rules of Civil Procedure requires that the particular infringing acts be set out with some specificity . . . and broad, sweeping allegations of infringement do not comply," Carell v. Shubert Org., 104 F.

8

Supp. 2d 236, 251 (S.D.N.Y. 2000) (internal citations omitted),

the allegations in this case are sufficient under Rule 8 to give

the Defendants "fair notice of what the . . . claim is and the

grounds upon which it rests." Bell Atl. Corp., 127 S. Ct. at

1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))

(alteration in original); cf. Arista Records LLC v. Media Servs.

LLC, No. 06 Civ. 15319 (NRB), 2008 WL 563470, at *11 (S.D.N.Y.

Feb. 25, 2008) (stating that the rule requiring pleading the

original work that is the subject of an infringement claim "does

not compel the dismissal of a complaint that identifies a subset

of the infringed works and thus, properly states copyright

claims predicated on the identified works"). Accordingly,

Defendants' motion to dismiss the copyright claims is denied.

## III. **THE MOTION TO DISMISS THE COMPLAINT AGAINST JALEM GETZ IS GRANTED**

Defendants have conceded that, for purposes of this

motion, the Court has personal jurisdiction over Buyseasons.

Def. Mem. 10 n.5. However, Defendants have moved for dismissal

of the Amended Complaint for lack of personal jurisdiction over

Jalem Getz pursuant to Rule 12(b)(2), Fed. R. Civ. P.

### a. **The Legal Standard**

9

"When responding to a Rule 12(b)(2) motion to dismiss
for lack of personal jurisdiction, the plaintiff bears the
burden of establishing that the court has jurisdiction over the
defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84
(2d Cir. 2001) (quoting Bank Brussels Lambert v. Fiddler
Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)).
However, when a defendant challenges personal jurisdiction
through a 12(b)(2) motion prior to discovery and no evidentiary
hearing has been held, a plaintiff may defeat the motion by
making a prima facie showing of personal jurisdiction through
the pleadings and affidavits, which must be construed in the
light most favorable to the plaintiff. See id.; Ball v.
Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.
1990). Here, since an evidentiary hearing has not been held,
Arma "need only make a prima facie showing by its pleadings and
affidavits that jurisdiction exists," in order to defeat
Defendants' motion to dismiss. CutCo Indus., Inc. v. Naughton,
806 F.2d 361, 365 (2d Cir. 1986).

## b. **The Forum Selection Clause**

In order to determine whether jurisdiction over Getz
is appropriate, the Court first looks to the forum selection

10

clause in the Distribution Agreement ("Forum Selection Clause").

U.S. Bank Nat'l Ass'n v. Ables & Hall Bldgs., No. 08 Civ. 2540

(DC), 2008 WL 4694536, at *8 (S.D.N.Y. October 27, 2008) ("Where

an agreement contains a valid and enforceable forum selection

clause, it is not necessary to analyze jurisdiction under New

York's long-arm statute or federal constitutional requirements

of due process."). Plaintiffs here contend that the Forum

Selection Clause establishes jurisdiction in this Court with

regard to Getz. The Forum Selection Clause provides:

> 9.2 Governing Law; Jurisdiction. This Agreement shall
> be governed by and interpreted in accordance with the
> laws of the State of New York applicable to contracts
> entered into and to be wholly performed within the
> State of New York. In the event of any claim or
> controversy arising under this Agreement, the parties
> hereto hereby irrevocably submit to the personal
> jurisdiction of the Federal and state courts located
> in the County of New York, State of New York and
> hereby waive any objection thereto on the basis of
> lack of venue, forum non conveniens or any similar-
> type grounds.

Am. Compl., Ex. D.

Plaintiffs argue that Getz is personally bound by the

Forum Selection Clause because he is "inextricably associated

with the transaction and the [D]efendants." Pl. Mem. 9.

However, Plaintiffs' assertion mistakenly assumes that the

claims asserted against Getz are sufficiently related to the the

11

expired Distribution Agreement to warrant the Forum Selection

Clause's application to its claims. In this Circuit, "when

ascertaining the applicability of a contractual provision to

particular claims, [courts must] examine the substance of those

claims, shorn of their labels." Phillips v. Audio Active Ltd.,

494 F.3d 378, 388 (2d Cir. 2007). Where, as in the present

action, the rights being asserted do not originate from the

contract containing the forum selection clause, the clause does

not apply. See id. at 390; Corcovado Music Corp. v. Hollis

Music, Inc., 981 F.2d 679, 682 (2d Cir. 1993) ("The Cheever case

illustrates that where a plaintiff sues for copyright

infringement and asserts no rights under a contract with the

defendant containing a forum-selection clause, the forum-

selection clause has no effect." (citing Cheever v. Acad. Chi.

Ltd., 690 F. Supp. 281, 285 (S.D.N.Y. 1988)).

          The same analysis applies to Plaintiffs' federal

trademark and state unfair competition claims. Plaintiffs'

rights in the marks at issue do not arise from the Distribution

Agreement and therefore the Forum Selection Clause does not

apply. Compare Phillips, 494 F.3d at 392 (holding that, like

copyright claims, remaining claims "premised on defendants'

allegedly improper exploitation" of songs "do not originate from

the . . . contract and are exempt from operation of the forum

selection clause"), with Weingrad v. Telepathy, Inc., No. 05
Civ. 2024 (MBM), 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005)
(applying forum selection clause "even after the contract has
expired, where . . . plaintiff's claims involve rights arising
out of the contract[,] the entire business relationship between
the parties stems from that contract," and the agreement stated
"that the forum selection clause survives termination or
expiration of the agreement").

Further, by its own terms, the Forum Selection Clause
applies only to "any claim or controversy arising under this
Agreement." Plaintiffs allege in the Amended Complaint that
"Defendants were at one time a licensee of plaintiffs pursuant
to a written agreement, said agreement having expired and of no
further effect." Am. Compl. at ¶ 2; see also id. at ¶ 33
("[A]ny and all rights [under the Distribution Agreement] ceased
on November 15, 2007."). As the Amended Complaint makes clear,
Plaintiffs' remaining claims against Getz do not assert rights
under the contract, but rather assert rights arising under
federal copyright and trademark law, as well as common law
unfair competition. Accordingly, the Forum Selection Clause is
insufficient to grant this Court jurisdiction over Getz.

## c.  **New York's Long-Arm Statute**

13

In the absence of jurisdiction through the Forum
Selection Clause, the Court must look to state law to determine
whether personal jurisdiction over Getz exists in this Court.
In both diversity and federal question cases, including claims
alleging copyright and trademark infringement, the courts'
inquiry as to personal jurisdiction begins with the forum
state's long arm statute.  See Bensusan Rest. Corp. v. King, 126
F.3d 25, 27 (2d Cir. 1997); Pearson Educ., Inc. v. Shi, 525 F.
Supp. 2d 551, 555 (S.D.N.Y. 2007) ("Because the Lanham Act and
Copyright Act do not provide for national service of process,
New York's long arm statute . . . governs the instant action."
(internal citation omitted)).

Assessing whether personal jurisdiction is authorized
under New York law requires the Court to determine whether the
defendant is either "doing business" in the state within the
meaning of New York Civil Practice Law and Rules ("CPLR") § 301,
or has committed acts within the scope of New York's long-arm
statute, CPLR § 302.  See e.g., Karabu Corp. v. Gitner, 16 F.
Supp. 2d 319 (S.D.N.Y. 1998) (citing Landoil Res. Corp. v.
Alexander Servs., Inc., 565 N.E.2d 488, 490 (N.Y. 1990).  If the
exercise of jurisdiction is appropriate under either of these
statutes, the Court must then determine whether such exercise

14

comports with the requisites of due process. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996).

In this case, Plaintiffs do not assert facts sufficient to establish jurisdiction over Getz pursuant to CPLR § 301, under which a foreign defendant corporation is amenable to suit in New York if it has engaged in "such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted[.]" Landoil Res. Corp., 565 N.E.2d at 490 (citations omitted). Neither does Plaintiff allege that jurisdiction over Getz is proper on the basis of personal commission of "a tortious act within the state" pursuant to § 302(a)(2). Rather, Plaintiff asserts that jurisdiction over Getz is proper under section 302(a)(1), which states:

§ 302. Personal jurisdiction by acts of non-domiciliaries.

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; . . .

15

N.Y. C.P.L.R. § 302(a). "To establish personal jurisdiction under this provision, the plaintiff must demonstrate that the defendant engaged in a purposeful business transaction in or directed to New York and that such contacts with the state had a 'substantial relationship' to the claim asserted in the underlying litigation." Pearson Educ., Inc., 525 F. Supp. 2d at 555 (citing Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir.2006)).

Although Defendants have, for the purposes of this motion, assumed that the Court has personal jurisdiction over Buyseasons, it does not necessarily follow that the Court has jurisdiction over Getz as President and CEO of Buyseasons pursuant to § 302(a)(1). See Pilates, Inc. v. Current Concepts, No. 96 Civ. 43 (MGC), 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1998) ("[A] general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction."). Given that Plaintiffs do not allege in the Amended Complaint any facts that Getz personally engaged in any business in New York sufficient to confer jurisdiction over him as an individual under § 302(a)(1), Plaintiff's argument necessarily relies on New York's agency theory of personal jurisdiction.

16

In order to attribute a corporation's New York

contacts to an individual under CPLR § 302(a)(1), New York law

requires a Plaintiff to "convince the court that [the

corporation] engaged in purposeful activities in this State in

relation to [Plaintiff's] transaction for the benefit of and

with the knowledge and consent of the [individual defendant] and

that [the individual defendant] exercised some control over [the

corporation] in the matter." Kreutter v. McFadden Oil Corp.,

522 N.E.2d 40, 44 (N.Y. 1988). Although "[p]laintiff need not

establish a formal agency relationship" between the individual

defendant and the corporation to successfully assert an agency

theory, id., a plaintiff must allege facts sufficient to

establish all four elements of the agency test. See Anna Sui

Corp. v. Forever 21, Inc., No. 07 Civ. 3235 (TPG), 2008 WL

4386747, at *2 (S.D.N.Y. Sept. 25, 2008) (applying four-pronged

test laid out in Beatie & Osborn LLP v. Patriot Scientific

Corp., 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006)). As a

necessary part of this inquiry, a plaintiff must demonstrate

that "the out-of-state corporate officers were 'primary actor[s]

in the transaction in New York' that gave rise to the

litigation, and not merely 'some corporate employee[s] . . . who

played no part in' it." Karabu Corp., 16 F. Supp. 2d at 323

(quoting Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18,

22 (2d Cir. 1988) (alteration in original).

Here Plaintiffs contend that personal jurisdiction
over Getz is proper under an agency theory because Getz
"exercises complete control" over Buyseasons, and "personally
benefits from its success." Pl. Mem. 14. In support of these
statements, Plaintiffs have alleged that Getz is "President,
Chief Executive Officer (CEO) and principal shareholder and
driving force behind co-defendants BuySeasons and BuyCostumes,"
Am. Compl. ¶ 10, and that Getz "was actively engaged in the day
to day decisions with respect to the use of intellectual
property during the term of the contract" and "personally
participated in the day to day decisions relating to the use of
the marks and images in various forms of advertising and media
during the term of the contract." Id. ¶ 37, 38. While Getz, in
his Supplemental Affidavit, has refuted a number of the
statements in the Arma Declaration regarding the extent to which
he exercised control over Buyseasons' relationship with
Plaintiffs, see Def. Reply Mem., Ex. A, at this stage in the
proceedings the Court must resolve all doubts in favor of the
Plaintiffs. However, even if Plaintiffs' allegations
demonstrate that Getz played an important role in the
negotiation and application of the Distribution Agreement and in
the operation of Buyseasons' website generally, Plaintiffs have
failed to persuade the court that Getz was a "primary actor" in
any conduct targeting New York.

Plaintiffs cannot base jurisdiction on "conclusory allegations that the defendant controls the corporation." Karabu Corp., 16 F. Supp. 2d at 324; see Am. Compl. ¶¶ 68, 83 (alleging that Getz "had/has the right and ability to control and had actual control over the conduct of Buyseasons and the content of its web site)." Further, none of Plaintiffs' allegations identify any post-Distribution Agreement evidence of Getz's control over activities related to Plaintiffs' remaining claims. See Decl. of Julie Arma ("Arma Decl.") ¶ 6 (stating that Getz negotiated the Agreement on behalf of Buyseasons); id. at ¶ 7 (stating that "[e]very decision of consequence" relating to the use of the intellectual property at issue had to "go through" Getz); id. at ¶ 8 (stating that Getz informed her that "he had to personally approve every promotion advertisement and discount involving Tom Arma costumes"); id. at ¶ 9 (stating that Getz "frequently called [her] at home to inform [her] of infringements of the Tom Arma name" by third parties); id. at ¶ 11 (stating that Getz "personally approved layouts of [Tom Arma] products in defendants' catalogues and so represented.").

Courts in this district "have . . . routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand."

19

Karabu Corp., 16 F. Supp. 2d at 324. Here, while Plaintiffs do
provide detailed accounts of Getz's role in the Distribution
Agreement and the company's activities in connection with that
Agreement, they offer no specific allegations of the role Getz
played in maintaining the website after the Agreement
terminated, and accordingly, Plaintiffs have not established
that personal jurisdiction over Getz under an agency theory is
appropriate.

Finally, Plaintiffs contend that personal jurisdiction
over Getz is proper under an alter ego theory. Plaintiffs,
however, have made no allegations in their Amended Complaint
sufficient to establish that Buyseasons has been used as an
alter ego by Getz. See Packer v. TDI Sys., Inc., 959 F. Supp.
192, 202 (S.D.N.Y. 1997) (listing factors to be considered for
finding of alter ego). Therefore, Defendants' motion to dismiss
the Amended Complaint against Getz is granted.

## IV. THE MOTION TO DISMISS THE COMPLAINT AGAINST BUYSEASONS FOR LACK OF VENUE IS DENIED

Defendants also move to dismiss the Amended Complaint
pursuant to Rule 12(b)(3) for improper venue. The standard for
defeating a motion to dismiss under Rule 12(b)(3) is similar to
the standard under Rule 12(b)(2). "[T]he burden of showing that

venue in the forum district is proper falls on the plaintiff,"
U.S.E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F.
Supp. 2d 173 (S.D.N.Y. 2001); but absent an evidentiary hearing,
"'the plaintiff need only make a prima facie showing of
[venue].'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d
Cir. 2005) (quoting Cutco Indus., 806 F.2d at 364—65). "In a
case involving multiple claims, the plaintiff must show that
venue is proper for each claim asserted, but dismissal of an
improperly venued claim is not warranted if it is factually
related to a properly venued claim and the claims could be
considered 'one cause of action with two grounds of relief.'
U.S.E.P.A. ex rel. McKeown, 162 F. Supp. 2d at 183 (citation
omitted).

Plaintiffs have asserted that the Forum Selection
Clause satisfies any question as to the whether venue in this
District is appropriate. However, for the reasons discussed
above, the Court finds that the Forum Selection Clause does not
apply to the remaining claims.

Defendants have, as noted above, assumed that venue in
this District is proper in connection with Plaintiffs' copyright
claims. At the same time, Defendants argue that the Court
should decline to exercise "pendent venue" over Plaintiffs'

remaining trademark and common law unfair competition claims.
See Def. Mem. 12 n.8.   In determining whether pendent venue is
appropriate over federal law claims, a court in this district
must "determine which of the two federal claims is the 'primary
claim,' and apply the venue statute applicable to that claim."
Solow Bldg. Co. v. ATC Assocs., 175 F. Supp. 2d 465, 470
(E.D.N.Y. 2001); see Hsin Ten Enter. USA, Inc. v. Clark Enters.,
138 F. Supp. 2d 449, 463 (S.D.N.Y. 2000) (utilizing primary
claim approach to exercise pendent jurisdiction over plaintiff's
patent infringement claim).

Here, the exercise of pendent jurisdiction over
Plaintiffs' trademark infringement claims is appropriate
because, contrary to Defendants' contentions, the copyright
claims appear to be Plaintiffs' "primary claims."   Plaintiffs
raise four copyright claims against all Defendants and only
three trademark claims.   At the very least, Defendants have not
convinced the Court that the non-copyright claims are more
significant to Plaintiffs' action than the copyright claims.

As to Plaintiffs' common law unfair competition
claims, "where venue is lacking for a state law claim that
arises out of the same nucleus of operative facts as a 'properly
venued' federal claim . . . . [c]ourts within this circuit

22

routinely exercise pendent venue." Hsin Ten Enter. USA, Inc.,
138 F. Supp. 2d at 462.  Plaintiffs' claims all arise from the
same post-Distribution Agreement period and involve similar
facts.

Finally, "judicial economy, convenience to the parties
and the court system, avoidance of piecemeal litigation and
fairness to the litigants," counsel in favor of the exercise of
pendent jurisdiction.  Id. (quoting Banfield v. UHS Home
Attendants, Inc., No. 96 Civ. 4850 (JFK), 1997 WL 342422, at *2
(S.D.N.Y. June 23, 1997)).  Therefore, Defendants' motion to
dismiss for lack of venue is dismissed.

## IV.  The Motion to Transfer Venue is Denied

Alternatively, Defendants ask the Court to transfer
venue to the Eastern District of Wisconsin pursuant to 28 U.S.C.
§§ 1404(a), which permits transfer "[f]or the convenience of
parties and witnesses, in the interests of justice."  "The
determination whether to grant a change of venue requires a
balancing of conveniences, which is left to the sound discretion
of the district court."  Filmline (Cross-Country) Prods., Inc.
v. United Artists Corp., 865 F.2d  513, 520 (2d Cir. 1989)
(citations omitted).  The inquiry involves two steps.  The court

23

must establish first whether the case could have been filed in the transferee district, followed by a determination whether the convenience of the parties and the interests of justice favor transfer. See Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). In assessing whether a transfer is appropriate, courts have considered, inter alia: 1) the plaintiff's choice of forum; 2) the locus of the operative facts; 3) the convenience and relative means of the parties; 4) the convenience of witnesses; 5) the availability of process to compel the attendance of witnesses; 6) the location of physical evidence; 7) the relative familiarity of the court with the applicable law; and 8) the interests of justice, including the interests of trial efficiency. See, e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006) (listing factors); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 560–61 (S.D.N.Y. 2000) (same). While the movant "bears the burden of clearly establishing that these factors favor transfer," Citigroup, 97 F. Supp. 2d at 561, "district courts have broad discretion in making determinations of convenience under [§] 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair, 462 F.3d at 106.

Here, Plaintiffs do not dispute that venue in the
Eastern District of Wisconsin would have been proper. However,
a plaintiff's choice of forum is generally entitled to
deference. See Aerotel Ltd., v. Sprint Corp., 100 F. Supp. 2d
189, 197 (S.D.N.Y. 2000) ("[U]nless the balance is strongly in
favor of the defendant, the plaintiff's choice of forum should
rarely be disturbed." (quotation and citation omitted)).
Defendants argue that the deference due Plaintiffs is
substantially diminished because this District is not
Plaintiffs' home district. Regardless of whether Plaintiffs'
choice is entitled to less deference than would be the case if
New York was Plaintiffs' home forum, the factors discussed below
do not provide sufficient grounds to overcome Plaintiffs' choice
of forum.

Plaintiffs have alleged primarily copyright and
trademark infringement claims. The locus of operative facts
relevant to these claims, as Defendants point out, includes
Wisconsin, as that is where any decisions regarding the
allegedly infringing materials by Buyseasons' would have been
made. However, Defendants' products were marketed and sold
throughout the country. The placement and use of the allegedly
infringing images on the internet suggests that this factor does
not weigh heavily in favor of transfer.

Defendants also argue that "New York appears to be inconvenient for both Plaintiffs and Defendants alike." Def. Mem. 20, a fact that Plaintiffs dispute. See Pl. Mem. 17. While Wisconsin, Defendants' place of business, is undeniably more convenient to it, Wisconsin is equally inconvenient to the Plaintiffs as New York. Further, while "a court may consider the relative means of the parties in determining venue," there is no indication here that "a disparity exists between the means of the parties," sufficient to warrant considering this factor in favor of either party. Aerotel, at 197.

"The convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." Id. Defendants have identified Jalem Getz, other Buyseasons' employees located in Wisconsin, Arma and Arma's wife, Julie Arma, both located in Arizona, as the primary witnesses in the case. Def. Mem. 19. While it is true that these witnesses are not located in this District, Defendants have failed to provide the Court with an affidavit "containing 'detailed factual statements identifying the potential principal witnesses expected to be called and a general statement of the substance of their testimony.'" Am. Eagle Outfitters, Inc., v. Tala Bros. Corp., 547 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (citation

omitted).   While Defendants have provided a brief summary of the likely "primary witnesses," they have failed to make this required showing.  Getz Decl. ¶ 11.

Defendants also argue that documents related to Buyseasons' website are located in Wisconsin.  However, "the location of records is not a compelling consideration when records are easily portable."  Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905 (GEL), 2002 WL 72936, at * 12 (S.D.N.Y. Jan. 17, 2002) (citation omitted).

Similarly, the Court's relative familiarity with the applicable law does not weigh in favor of transfer as this District and the Eastern District of Wisconsin are both well-equipped to preside over Plaintiffs' copyright, trademark, and common law claims.

Finally, the interests of justice do not warrant transfer in this case.  Defendants have admitted that venue is proper in this District for Plaintiffs' copyright claims.  To transfer Plaintiffs' remaining claims to the Eastern District of Wisconsin while retaining the copyright claims in this Court certainly does not serve the interest of trial efficiency.

Given that the other factors do not weigh heavily in favor of Defendants, Plaintiff's choice of forum "becomes the important consideration that tips the scales in Plaintiffs' favor to keep venue in New York for each of the claims raised." Astor Holdings at *13. Accordingly, Defendants' motion to transfer venue is denied.

## Conclusion

The motion to dismiss the breach of contract claim is granted with leave granted to replead within 20 days. The motion to dismiss the copyright infringement claims is denied. The motion to dismiss the Amended Complaint against Getz is granted. The motions to dismiss the Amended Complaint against Buycostumes and to transfer this action to the Eastern District of Wisconsin are denied.

It is so ordered.

New York, NY
December    , 2008

ROBERT W. SWEET
U.S.D.J.